404 P.2d 337
**Robert J. CONRAD, Claimant-Appellant,**

**v.**

**Ernest ALTMILLER, Defendant,**
and
**Employment Security Agency, Defendant-Respondent.**

**No. 9567.**

Supreme Court of Idaho.
July 22, 1965.

Leslie T. McCarthy, Lewiston, for appellant.

Franklin H. Powell, Boise, for Employment Security Agency.

TAYLOR, Justice.

Claimant (appellant) commenced working for Ernest Altmiller (employer) on

November 2, 1963. He was employed in the woods near North Fork, Idaho, as a pole maker. He was paid on a piecework basis, computed at a variable amount for each log peeled. He furnished and maintained his own equipment, which included a power saw, peeling axes and other hand tools. An allowance was included in his compensation for the use of this equipment. He quit this employment at the end of November because he was afraid he would be snowed in. In December the employer's camp was moved to a lower elevation and on December 19th claimant resumed his former employment. On December 31st the employer advised claimant that operations at the camp would be suspended until Monday, January 6, 1964, and inquired whether claimant would return to the job.

In his testimony before the appeals examiner, claimant gave his version of what passed between himself and his employer at that time, as follows:

"Well, on the 31st of December Mr. Altmiller had told the members of the crew that they were shutting the works down for awhile, it was too muddy; but he hoped to open up on the following Monday—this was on Tuesday. A few minutes later Mr. Altmiller came over to the trailer house where I was staying and asked me if I was going to be back up there next Monday when they opened up. I didn't give.

Mr. Altmiller a definite yes or no answer. I told him, 'Well, you've got five pole makers here on the landing. It looks to me like you've got work for about two or three. Are you sure you'll have work enough for me?' Mr. Altmiller said to me, 'Well, if you're not sure you'll be back, I'll get somebody in your place.' *And I just agreed with him it was a good idea.* * * *"
(Board's emphasis.)

Claimant further testified that he considered he was laid off. Mr. Altmiller's statement of the termination was:

"Well, I went up to where he was stayin' in the trailer house there and he was—had his rig loaded; he said he was goin' to town, * * *."
It later developed that the employer did not procure a replacement for claimant. The board further found, and concluded:

"At the time of his termination claimant had no reasonably certain prospects of other employment. His entire earnings from January 1 to April 6, 1964 were $5.00 which he received for 'loadin' a load of posts for a fellow in Washington.'"

"The Board finds and rules that claimant voluntarily left his employment on December 31, 1963, rather than being terminated by his employer.

"The Board finds and rules that claimant has not sustained his burden of proving that he had good cause for voluntarily leaving his employment. Claimant was engaged in his usual work. The working conditions were normal for the season and the industry involved. The compensation, while rather low because of seasonal and weather problems, was as high or higher than that paid on a piece-work basis by other firms similarly engaged. Claimant had prospects for earning at least reasonable subsistence pay in this employment, and he had no reasonable prospects for other employment. Claimant has shown no compelling reasons for voluntarily leaving his employment and joining the ranks of the unemployed."

The board entered its order denying benefits and this appeal followed.

██ Two issues are presented. First, did claimant voluntarily quit his employment, or was he laid off? Second, if he quit, did he quit for good cause? As to the first, the record fully supports the board's findings that claimant had voluntarily quit and was not laid off by his employer. As to good cause, it is claimant's contention that he was not profitably employed. To meet this contention a comparative analysis was made by the agency of his earnings during the last twelve days of December, 1963, which revealed net earnings of $5.50 per day after deductions and expenses incurred during that period, and that if he had been drawing unemployment benefits during that period, he would have received approximately $6.30 per day. Claimant was a single man without dependents. The trailer in which he was living while on the job was furnished by the employer. In claimant's circumstances and without a reasonable prospect of more remunerative employment, the fact that he would draw a greater amount in unemployment benefits than his current net earnings on a job which was in his field of employment, was not good cause, within the meaning of I.C. § 72–1366(f), for quitting that employment.

" * * * In order to constitute good cause, the circumstances which compel the decision to leave employment must be real, not imaginary, substantial not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous circumstances. The standard of what constitutes good cause is the standard of reasonableness as applied to the average man or woman, and not to the supersensitive; * * *." 81 C.J.S. Social Security and Public Welfare § 167, pp. 253, 254.

Burroughs v. Employment Security Agency, 86 Idaho 412, 387 P.2d 473 (1963);

Roby v. Potlatch Forests, 74 Idaho 404, 263 P.2d 553 (1953).

Order affirmed.

No costs allowed.  I.C. § 72–1375(b).

McQUADE, C. J., and McFADDEN, SMITH and KNUDSON, JJ., concur.