435 P.2d 256

Hal A. CLARK, Sr., Claimant-Appellant,

v.

BOGUS BASIN RECREATIONAL ASSOCI-
ATION, Inc., and Department of Employ-
ment, Defendants-Respondents.

No. 10045.

Supreme Court of Idaho.

Dec. 15, 1967.

Frank E. Chalfant, Sr., Boise, for claimant-appellant.

Robert C. Youngstrom, Boise, for Department of Employment.

SPEAR, Justice.

This appeal is from an order of the Industrial Accident Board affirming the decision of the appeals examiner denying unemployment benefits to claimant-employee Hal A. Clark (hereinafter referred to as "appellant") on the grounds that he voluntarily left his employment without good cause.

Appellant brought this action under the Employment Security Law, I.C. Title 72 ch. 13, against his employer, Bogus Basin Recreational Association (hereinafter referred to as "the resort"), and the Department of Employment, seeking reinstatement of his unemployment insurance benefits.

Before the appeals examiner, appellant testified that he had been employed by the resort as a ski lift operator for approxi-mately two-and-one-half winter seasons. For the past two seasons he had worked a double shift, that is both day and night, earning $26 per day.

This last season, during which appellant worked from October 26 to December 17, 1966, he earned only $14 per day as he was not given regular night shift duty. Dean Coltrin, the area foreman at the resort, testified that he had told appellant there would be some night shift duty available for him but that there would have to be a fair division of the work among all the lift operators. On the morning of December 17, 1966, appellant told Coltrin this would be his last day as he wasn't making enough money.

Appellant also testified that during his first season of employment he drove the resort vehicle, a three-quarter-ton Dodge 4-wheel-drive pickup truck with a camper van behind it, to and from work. Part of his duties consisted of bringing the receipts down with him at night and depositing them at the bank. Appellant stated that he could not ride in the back of this vehicle, however, because he was subject to motion sickness.

During the 1965–66 season appellant drove to the resort in his own car since that was the only way he could get to work without becoming ill. He testified he was able to afford this only because he worked a double shift.

However, this last season appellant had to be driven up in the resort vehicle. His own car was laid up for repairs and as he was working only one shift he couldn't afford to pay the repair bill or to rent another car for the purposes of getting to work. As a result, he would continually suffer from motion sickness.

Robert Loughrey, general manager of the resort, testified that the company vehicle was furnished to employees as a means of transportation to and from work merely as a "convenience," but that it was not guaranteed to them as a part of their employment agreement. He stated that the truck was available to all personnel when there was room to ride in it, but that the employees could make other arrangements if they so

desired, especially those on the night shift since the truck did not go down late at night.

Appellant gave as his reasons for quitting (1) that he continually became car sick while riding up in the back of the resort vehicle, and (2) that he could not afford to drive his own car when he only worked part-time at night. He never asked for a raise, but did mention to Mr. Coltrin that if he had more money he could afford to drive.

While noting much of the foregoing in his findings of fact, the appeals examiner stated in his conclusions of law that "in most areas of employment, transportation becomes the responsibility of the employee." He found such to be the case here and denied benefits to appellant under I.C. § 72–1366(f) which provides:

"The personal eligibility conditions of a benefit claimant are that—

*    *    *    *    *    *

(f) His unemployment is not due to the fact that he left his employment voluntarily without good cause * * *."

Appellant was the only person to give testimony in the hearing before the Board. Basically, this testimony merely amplifies his former statements and contentions taken before the appeals examiner.

In addition appellant testified that before the season began he discussed with Mr. Coltrin the "possibility" of working a full double shift and that he fully expected to be so employed as he had in the past. Just before the night skiing was to begin (about two weeks into the regular ski season), Mr. Coltrin informed him that another employee would be given the steady night shift work. Appellant then explained that he would look for a night job in town as he needed full-time employment, and that if he found such work he could continue to work at the resort during the day and still afford to drive back and forth.

However, appellant admitted that Mr. Coltrin had offered him some part-time night work, but claimed that in the past such arrangements had not worked out very well. He remained on the day shift for about three more weeks and then quit on the 17th of December, 1966. Since that time, he has been unemployed.

Appellant further testified that although he was aware at the beginning of this last season that riding up in the van would make him sick, he decided to "tough it out" until the night shift began, at which time he would make other arrangements. His plan was to earn enough money by working both shifts so he could afford either to rent a vehicle or be able to pay the $350 repair bill on his car. At this time, he felt there was no reason why he wouldn't be working two shifts.

Appellant claimed that one of the first things he, like every other employee, was told was that transportation would be available to the resort. His testimony in this respect is as follows:

"[A]ny employee that works at Bogus Basin is under the impression that they park their car at the parking lot at the bottom of the hill and use Bogus Basin's transportation. That's one of the things that they understand when they go to work there. It's been recommended time and time again that the employees not drive their automobile over that road due to the hazards of the road itself, and because they have a deadline to meet—they have to be there at a certain time. * *

*    *    *    *    *    *

"All of the employees ride in that van, except on a voluntary basis if they drive their own vehicle. But everybody parks their automobile in that parking lot and gets in that van at 7:30 in the morning."

In affirming the decision of the appeals examiner, the Board concluded that whether the resort's provision for transportation was deemed a "convenience" or a "condition of employment," this was not pertinent to the issue of good cause.

Appellant asserts 15 different specifications of error which can be reduced to three for the purposes of this appeal.

First, appellant contends that the Board is required, as a matter of law, to make specific findings of fact under a clearly marked heading, citing I.C. § 72–604.

Appellant would have been more accurate were he to have cited the provisions of I.C. §§ 72–1368(f) and (g) which relate directly to the Employment Security Law. I.C. § 72–1368(f) provides in pertinent part:

"Such decision [of the appeals examiner] shall set forth the findings of fact upon which the decision is based together with a statement showing how the appeals examiner applied the Employment Security Law to such findings of fact in order to reach his conclusion."

On the other hand, I.C. § 72–1368(g) provides that the record of the proceedings before the appeals examiner shall become part of the record of the proceedings on a claim for review before the Board, but the Board is not precluded from hearing the same witnesses as appeared before the appeals examiner and may hear additional witnesses. It further states:

"After affording a fair and impartial hearing to the parties involved in a claim for review, *the board shall affirm, reverse, modify, set aside or revise* the decision of the appeals examiner or may refer the matter back to the appeals examiner for further findings of fact. The board shall file its *decision* and shall promptly serve notice of its decision to all the interested parties." (emphasis supplied)

Thus, the Board is not bound under the provisions of the Employment Security Law to file specific findings of fact.

Moreover, it is evident from the recitals contained in the Board's order that it adopted the findings of the appeals examiner. While this court has held that the Board is fundamentally a fact finding body whose function is to apply the law to the facts as found by it, not to facts found by some other officer or agency (In Re Markham's Inc., 79 Idaho 307, 316 P.2d 553 (1957)), the Markham decision does not compel the Board to make a specific set of findings apart from those made by the appeals examiner in the same case. This is especially true where the Board hears no new witnesses and does not take additional evidence fundamentally different from that adduced before the appeals examiner—as was the case here.

However, should the Board take additional evidence apart from that adduced before the appeals examiner or should it hear new witnesses, it would be most appropriate, if not essential, for it to make specific findings of fact on this new evidence.

Secondly, appellant contends that the Board erred in ruling that he left his employment "voluntarily without good cause." (I.C. § 72–1366(f)) Appellant claims that "good cause" was proven as a matter of law and bases this contention on two grounds: (1) the severe nausea and vomiting occasioned by riding in the back of the vehicle provided by the resort and (2) the reduction to only one shift which resulted in a substantial loss of pay from the previous two seasons.

While the Board did not consider as pertinent to the issue of good cause whether or not the transportation provided by the resort was simply a "convenience" or a "condition of employment," the record fully supports the conclusion of the appeals examiner that such transportation was provided as a convenience for the employees.

We are, therefore, not called upon to decide the issue of whether "good cause" within the meaning of I.C. § 72–1366(f) would be satisfied by a showing that transportation was a strict condition of employment. This being the case, appellant has failed to show good cause for voluntarily leaving his employment because the problem of transportation to and from work is the personal responsibility of the employee where there is no duty upon the employer to furnish such means. Mississippi Employment Security Commission v. Ballard, 252 Miss. 418, 174 So.2d 367 (1965); Zupancic v. Unemployment Compensation Board of Review, 186 Pa.Super. 252, 142 A.2d 395 (1958). See also Jacobs v. Office of Unem-

ployment Compensation and Placement, 27 Wash.2d 641, 179 P.2d 707 (1947); Copeland v. Oklahoma Employment Security Commission, 197 Okl. 429, 172 P.2d 420 (1946). .

■ . Moreover, this court is impressed with the fact that appellant was well aware that the transportation provided by the resort would cause him motion sickness and that it would be necessary to make other arrangements for his transportation as he had done the previous season. "Good cause" within the purview of our statute does not extend to purely personal and subjective reasons which are unique to the employee but embraces conditions other than those which by common knowledge are usual where accompanied by minor irritations. Boodry v. Eddy Bakeries Co., 88 Idaho 165, 397 P.2d 256 (1964); Burroughs v. Employment Security Agency, 86 Idaho 412, 387 P. 2d 473 (1963).

■ Appellant's second contention is also without merit. The record shows that the "possibility" of a double shift was discussed and that part-time night work was actually offered to him, but this he refused. There is no allegation on the part of appellant that he was offered a double shift as part of his contract of employment. The burden of establishing eligibility for unemployment benefits under the statute rests with appellant, Boodry v. Eddy Bakeries Co., supra; Burroughs v. Employment Security Agency, supra, and this he has failed to meet.

Finally, appellant argues that he was denied a fair and impartial hearing under I.C. § 72–1368(g) for the following reasons: (1) the Board should have referred the case back to the appeals examiner for further findings of fact, and (2) prejudicial matter was allowed into the record.

Appellant's first contention is that the issue of his wage reduction (failure to provide regular night shift) was not pursued by the Board, and further that no evidence was taken as to whether "the wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality of the work offered." (I.C. § 72–1366(i) (2) )

■ It is true that where unsatisfactory evidence is furnished by a claimant seeking unemployment compensation benefits the Board should either make further investigation on its own or refer the matter back to the appeals examiner. Hagadone v. Kirkpatrick, 66 Idaho 55, 154 P.2d 181 (1944); Wolfgram v. Employment Security Agency, 75 Idaho 389, 272 P.2d 699 (1954). From our review of the record, however, it is evident that both the Board and the appeals examiner considered appellant's claim of a reduction in wages to be without merit, and there is substantial and competent evidence to uphold that determination. It will not, therefore, be disturbed on review. Boodry v. Eddy Bakeries Co., 88 Idaho 165, 397 P.2d 256 (1964); Watts v. Employment Security Agency, 80 Idaho 529, 335 P.2d 533 (1959).

■ Moreover, appellant neither alleged nor gave the slightest indication that his wages or hours were substantially less favorable than those of other employees similarly situated in the locale. In a proceeding for benefits under the Employment Security Law, the burden is on the claimant to prove he has met the requirements and conditions for eligibility for benefit payments. O'Neal v. Employment Security Agency, 89 Idaho 313, 404 P.2d 600 (1965); Burroughs v. Employment Security Agency, supra; Rasmussen v. Gem State Packing Company, 83 Idaho 198, 360 P.2d 90 (1961). Appellant having failed to raise this particular issue, either by allegation or proof adduced, the Board was not compelled to make a finding thereon.

■ Appellant also assigns as prejudicial error an allegation of fraud and overpayment attached to his only exhibit, a letter received by the Board outlining his position and duly admitted into evidence. Although not before the court, this allegation apparently refers to a routing slip for use within the Department of Employment calling for the recovery of prior unemployment

benefits to which appellant was not entitled. The decision of the appeals examiner notes that benefits were originally allowed to appellant on the basis of his statement that being required to ride in the resort vehicle produced motion sickness.

There is no merit to appellant's claim of prejudice. No allegation of fraud was ever made and the record is devoid of any evidence to sustain this contention.

For the reasons hereinabove stated the order of the Board is affirmed. No costs allowed.

TAYLOR, C. J., and SMITH, Mc-QUADE and McFADDEN, JJ., concur.