494 P.2d 154

Bennie L. **TOLAND**, Claimant-Appellant,

v.

**Carl SCHNEIDER**, and Department of
Employment, Defendants-Respondents.

No. 10940.

Supreme Court of Idaho.

March 2, 1972.

Carl M. Buell, St. Maries, for claimant-
appellant.

R. LaVar Marsh, Legal Counsel, Dept. of
Employment, Boise, for defendants-re-
spondents.

SHEPARD, Justice.

Claimant-appellant Toland has appealed
from a ruling of the Industrial Accident
Board denying him unemployment compen-
sation. The Board ruled that Toland had
voluntarily terminated his prior employ-
ment without good cause therefor. We af-
firm the ruling of the Board.

Intermittently and over a two year span,
Toland had been employed by Carl Schnei-
der in the woods as a sawyer. In the pe-

riod between December 16 and December 29, 1970, claimant worked eight days for Schneider. The first two and one-half days he was paid at a flat rate of $45 per day and, during the remainder of the period, he was paid at a rate of $2.60 per thousand board feet of lumber sawed. Toland earned an average wage of $37 per working day.

Shortly after December 29, 1970 Toland terminated his employment with Schneider, stating among his reasons therefor that he was not being paid at an agreed upon $45 per day rate, that he could not meet his expenses upon the salary he received and that he was not being paid on the proper "pay days." Following his termination, Toland sought unemployment benefits. At the administrative level Toland was declared eligible for unemployment benefits but upon the case being appealed by the employer, the appeals examiner reversed that administrative finding, holding that Toland's unemployment was due to the fact that he had left his employment voluntarily without good cause. Toland appealed to the Industrial Accident Board, which affirmed the appeals examiner's decision, agreeing with the examiner's findings of fact and his conclusions of law.

■ On an appeal from an Industrial Accident Board finding in an unemployment compensation case, this Court is restricted to deciding questions of law. I.C. § 72–1368(i). Questions of fact are for the Board, and its findings will not be disturbed on appeal when its findings are supported by substantial and competent evidence. Boodry v. Eddy Bakeries Co., 88 Idaho 165, 397 P.2d 256 (1964); Watts v. Employment Security Agency, 80 Idaho 529, 335 P.2d 533 (1959).

In his testimony before the Board claimant contradicted and supplanted his former testimony given before the appeals examiner. Claimant asserted to the Board that he had earned only $205 in the eight working days prior to his termination rather than $295 as he had previously testified. Claimant also noted additional expenses to those found as fact by the appeals exam-

iner. Since the Board had before it the previous testimony of the claimant which essentially contradicted the testimony of the claimant at the Board hearing, there exists conflicting evidence which substantiates the findings of the Board and this Court will respect the factual determinations made by the Board based upon previous hearings.

■ The question of law fundamental to the disposition of this appeal is whether claimant, who concededly terminated his employment voluntarily, acted with good cause. Such good cause is a requisite for eligibility for unemployment compensation. The statutory provision governing that determination is contained in I.C. § 72–1366:

"The personal eligibility conditions of a benefit claimant are that * * *

"(f) His unemployment is not due to the fact that he left his employment voluntarily without good cause, or that he was discharged for misconduct in connection with his employment."

This Court has held that claimant has the burden of proving such "good cause" for voluntarily terminating his employment. The burden of establishing eligibility is placed upon the claimant whenever his claim for benefits is questioned. Boodry v. Eddy Bakeries Co., *supra*; Clark v. Bogus Basin Recreational Association, 91 Idaho 916, 435 P.2d 256 (1967); Burroughs v. Employment Security Agency, 86 Idaho 412, 387 P.2d 473 (1963); Roby v. Potlatch Forests, 74 Idaho 404, 263 P.2d 553 (1953).

■ Claimant asserts that he was not paid at a contract rate of $45 per day but that for five and a half days of the eight days worked prior to his termination he was paid at a rate of $2.60 per thousand board feet of lumber sawed. Claimant however introduced no evidence other than his oral statement to support his claim that $45 per day was in fact the stipulated wage for his employment. His failure to establish a binding $45 per day agreement militates against his assertion that Schneider's failure to pay him at the rate of $45 per day amounted to good cause for quit-

ting. A claim of low wages does not in and of itself establish good cause for terminating employment. Claimant must show either that his wages were abnormally low or that his wage was below the prevailing wage paid to other workers similarly employed in the same locale. Clark v. Bogus Basin Recreational Association, *supra*; Roby v. Potlatch Forests, *supra*. No evidence was adduced which indicates that the wages earned by claimant were abnormally low as compared with those of other sawyers working at comparable locations and at comparable times of the year. The record establishes that weather conditions common to the winter season generally make working conditions unfavorable for sawyers and that the compensation anticipated during the winter months is anticipated to be set off by above-average earnings during the remainder of the year when better weather conditions prevail.

The wages earned by claimant, found by the Board to be $295 for eight working days, produces an average of $37 per day. This is not shown by the record to be an unduly low wage as compared to the average sawyer's wage in that area during that time of year.

Claimant also urges that his expenses were inordinate as compared with his earnings. The record fails to disclose that the claimant has met his burden of proof in this regard.

Claimant finally suggests that Schneider did not make his salary payments on established "pay days." Claimant had testified before the appeals examiner that regular "pay days" were the 10th and 25th of each month. His employer countered with testimony that the 10th was the only pay day during the month but the 25th day constituted an "advance" day on which an employee could request and, at the discretion of the employer, receive an advance on his salary. The record discloses that claimant made no such request on the 25th of December, 1970. The appeals examiner concluded, and the Board concurred, that this factor did not contribute to, nor show

good cause for voluntarily terminating employment.

The legislative policy enunciated by unemployment compensation legislation is declared in I.C. § 72–1302. That policy is to encourage employers to provide stable employment and to relieve the burdens of unemployment by providing compensation to persons unemployed through no fault of their own. Previous decisions of this Court have indicated that I.C. § 72–1366(f), requiring good cause to be shown when employment termination has been voluntary, should be somewhat narrowly construed. The decision to voluntarily terminate employment must be reasonable, substantial and there must be some compulsion produced by necessitous circumstances. The standard of what constitutes good cause is a standard of reasonableness as applied to the average man or woman. Conrad v. Altmiller, 89 Idaho 214, 404 P.2d 337 (1965); Roby v. Potlatch Forests, *supra*; Burroughs v. Employment Security Agency, *supra*.

The record herein establishes that the claimant has failed to carry his burden of showing that his voluntary termination of employment was based upon good cause. The order of the Industrial Accident Board was based upon claimant's failure to show good cause for voluntarily terminating employment.

The ruling of the Industrial Accident Board is affirmed. Costs to respondents.

McQUADE, C. J., and McFADDEN, DONALDSON, JJ., concur.

PRATHER, District Judge (dissenting).

I concur in the basic proposition that the claimant had the burden of proving there was good cause to voluntarily terminate his employment. I further concur that an employee's decision to voluntarily terminate his employment must be reasonable and substantial and there must be some compulsion produced by necessitous circumstances and that the standard is one of reasonableness as applied to an average per-

son. I cannot concur that those rules have been properly applied in this case.

In applying the foregoing rules it is critical to determine whether or not Toland's gross receipts were actually $295.00 or only $205.00. The record is undisputed that the first 2½ days of work were performed at the rate of $45.00 per day. Thus, the existence or non-existence of a contract for that amount of pay becomes immaterial. The record is likewise undisputed that said contract was terminated and that the claimant thereafter accepted employment at the rate of $2.60 per thousand board feet. Therefore, in testing whether or not he was justified in quitting it is only the last 6½ days out of the total 9 days worked that should be considered. Furthermore, the record is undisputed that of the gross amount of money received by Toland one-fourth thereof was attributable to rental for his chain saw. Therefore, that amount should be deducted from his gross receipts to arrive at what his actual wages were for his labor. Since claimant's employment required that he live some seventy miles from his residence in St. Maries, Idaho, his cost of transportation and expenses for living away from home should be deducted in determining whether or not he was being paid an adequate wage and in considering whether or not there were necessitous circumstances that justified his voluntary quitting. When this is done we have a calculation that appears as follows:

|  | $295.00 | $205.00 |
|---|---|---|
| Total pay—9 days | $295.00 | $205.00 |
| less 2.5 days @ $45/day | 112.50 | 112.50 |
|  | $183.50 | $ 93.50 |
| less ¼ for saw rental | 45.88 | 23.37 |
| Gross wages for 6.5 days on per M basis | 137.62 | $ 70.13 |
| Average wage per day on per M basis | $ 21.17 | $ 10.79 |
| less cabin rent/day—5 day basis | 1.67 | 1.67 |
|  | $19.50 | $ 9.12 |
| less food/day | 4.00 | 4.00 |
|  | $15.50 | $ 5.12 |
| less heat/day—5 day basis | 1.78 | 1.78 |
|  | $ 13.72 | $ 3.34 |
| less travel—140 miles @ 10¢/mile | 2.80 | 2.80 |
| Net Wage per day | $ 10.92 | $ .54 |

The Court should declare as a matter of law that a net earning of 54¢ per day creates such a necessitous circumstance that any reasonable average person would be justified to voluntarily quit such employment.

The Industrial Accident Board made a Finding of Fact that claimant had earned a total of $295.00 during the time in question. This Finding of Fact cannot be sustained by the record made. This is not a matter of competent although conflicting evidence upon which the Board as the trier of facts is to make a decision. As a matter of law the only evidence before the Board was that claimant received a total of $205.00. This comes about in the following manner: Before the appeals examiner when asked how much he had made altogether between December 16th and December 29th the claimant answered $295.00. When the matter came on for hearing before the Industrial Accident Board (a hearing de novo pursuant to I.C. 72–1368(g)) the claimant was asked if he had a copy of the record before the appeals examiner and the following took place:

Mr. Toland was present but not represented by counsel. A member of the Industrial Accident Board asked Mr. Toland if there was anything he wished to add to the record that was already before the Board. He said there was. At this time he was placed under oath and a member of the Board asked Mr. R. LaVar Marsh, an attorney at law representing the Department of Employment, to assist Mr. Toland in presenting his case. Mr. Marsh did so. (It should be kept in mind that he was not Mr. Toland's attorney). Under examination by Mr. Marsh the following occurred:

Q (By Mr. Marsh) You did receive a copy of the transcript of that hearing?

A (By Mr. Toland) Yes, I did.

Q And you have read it; is that correct?

A I have read it.

Q Now, is there—let me ask you this: Is there anything in that record itself

which is not accurate or correct that you feel needs to be corrected at this time?

A Yes, there is.

Q Please tell the Board what those matters are.

A Here's another one there, that's on page 7 and he had $295.00.

Q Line 22?

A Yes. That should have been $205.00 because he took the two days off of the different job altogether which he owed us and paid us then.

Q Mr. Toland, may I ask a question or two just for the record? On that same page, 7, going back up to line 15 where the question is asked, "How much did you make altogether between December 16th and December 29th?" then you answered, "$295.00."

A That answer is wrong because it was $205.00 because he had just been talking about the other job and I got mixed up there.—

The record is completely devoid of any testimony of the employer as to what Mr. Toland was paid during the time in question. The record is likewise completely devoid of any documentary evidence in the way of payroll checks or other payroll records as to what Mr. Toland's payments were during the time in question. Thus, absolutely the only evidence before the Board as to the gross amount of money Mr. Toland received was his own testimony, first that it was $295.00 which at the invitation of the Board he corrected to $205.00.

I.C. 72–1368(g) provides that the record made before the appeals examiner becomes a part of the record before the Board and goes on to provide that the Board may again hear the same witnesses, other witnesses, and may receive any other additional evidence. Thus, the situation here is exactly the same as if the claimant had first testified to a figure of $295.00 and then later realized his error and corrected the figure to $205.00. At most the prior statement before the appeals examiner would be only proof of a prior inconsistent state-

ment. Absent some other proof in the record such prior inconsistent statement would not be sufficient upon which to base the Finding of Fact by the Board that he had earned $295.00. If a party testifies positively to a specific fact he may, of course, be impeached by proof that at another time he has made a statement inconsistent with his testimony concerning that fact. But the proof of the prior inconsistent statement alone is not proof of the fact as stated in said prior statement. The Board may have properly felt that the prior inconsistent statement so impeached Mr. Toland that his subsequent statement as to the $205.00 made in the presence of the Board was not worthy of belief. In such event then the only Finding of Fact that the Board could have made would have been that Toland had failed to prove in any way what his earnings were. But contrary to that, the Board attempted to make a specific finding that he had grossed $295.00. There is no evidence in the record to sustain that Finding of Fact. Since it is of such material importance this matter should be remanded to the Board for further proceedings to determine the claimant's gross earnings.

I cannot concur with the majority opinion that the previous testimony of Mr. Toland before the claims examiner created conflicting evidence upon which the Board could make a Finding of Fact. The prior inconsistent statement was expressly corrected by Mr. Toland. It could be no more than a prior inconsistent statement. Prior inconsistent statements do not create conflicts in the testimony but only reflect upon the credibility of the witness. Thus, the testimony before the Board that Mr. Toland's gross receipts were $205.00 was uncontradicted and without any conflict in the evidence.

I cannot concur that the only standard is whether or not the wage paid the employee was below the prevailing wage paid to other workers similarly employed in the same locale. I agree that the underlying policy of the Unemployment Compensation

legislation is to relieve the burdens of unemployment by providing compensation to persons unemployed through no fault of their own. However, in December of 1971 I.C. § 44–1502 prescribed that all employees in the State of Idaho be paid at a minimum rate of $1.40 per hour. For an eight hour day this would amount to $11.20. Even if his costs of working away from home are not considered the calculations hereinabove show that Mr. Toland was receiving less than that amount. Should not a man be considered unemployed through no fault of his own when he is being paid a wage upon which he cannot subsist and which is below the minimum wages prescribed by I.C. § 44–1502?

The claimant did establish that his rate of pay was $2.60 per thousand board feet but did fail to offer any proof as to the prevailing rate for sawing in the area during the time of year in question. Likewise, claimant submitted proof of his own expenses but failed to offer proof as to what expenses might normally be incurred in similar employment. In these regards it may be said that the claimant failed in his burden of proof. However, it seems that this is a very harsh rule to apply in the case of a poor working man representing himself before a sophisticated and highly trained Board represented by an attorney at law. It would seem more in keeping with the spirit and purpose of the Unemployment Compensation law if its experts had pointed out to the claimant what proof it was necessary for him to submit. However,

when the claimant has put in sufficient proof, as he did here, that his rate of pay is below the minimum wage prescribed by I.C. § 44–1502 then it should be held as a matter of law that he has established a prima facie case of voluntarily quitting his employment because of necessitous circumstances.

I cannot concur with the reasoning implicit in the majority opinion that summertime earnings may be averaged with wintertime earnings to determine whether or not an employee is being paid a substandard wage. Particularly is this so when the wintertime wage falls below the prescribed minimum wage law. I.C. § 44–1502 requires that the prescribed minimum wage be paid to an employee at any time of the year.

Assume that claimant was being paid according to the standard or average wage scale for that type of work in that particular area at that time of the year—is he still to be denied the benefits of unemployment compensation if that prevailing wage is below the minimum wage prescribed by I.C. § 44–1502? I think not.

For the foregoing reasons this matter should be remanded to the Industrial Accident Board for further proceedings as to what the claimant's gross receipts actually were and whether after deduction for his necessary expenses the remaining earnings were so low that a reasonable person would have been justified in terminating the employment voluntarily because of necessitous circumstances.