Argued October 8, reversed and remanded December 3, 1973

# FAJARDO, *Petitioner, v.* MORGAN, *Respondent.*

516 P2d 495

*J. Bradford Shiley,* Portland, argued the cause and filed the brief for petitioner.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Foley, Judges.

FOLEY, J.

Claimant quit her employment because she felt she was being discriminated against by reason of her sex. She appeals from a denial of her claim for unemployment compensation. The referee's decision, upheld by the Employment Appeals Board, was based on disqualification of the claimant under ORS 657.176 (2), which states:

> "An individual whose unemployment is due to:
>
> "* * * * *
>
> "(2) Having left work voluntarily without good cause * * *

"* * * * *
shall * * * be disqualified * * *."

Decision in this case depends on the meaning of "without good cause."

The essential facts are not in dispute. The claimant began working as a secretary for Boise Cascade Corporation on February 26, 1968, at a salary of $280 per month. She received raises twice yearly until June 21, 1971, when she was making $485 per month. At that time she was promoted to "sales correspondent," a position of increased responsibility, although she did not receive a raise at that time. On August 1, 1971, according to the employer's representative, Mr. Bayless, she received a raise to $520, but this was a merit increase for the secretarial job she had left. She did not receive another salary increase until August 1, 1972, because of the freeze on wages and prices in effect at that time. On August 1, 1972, her salary was increased to $585. The evidence showed that she would have been raised to $615 on February 1, 1973, if she had remained on the job. She resigned on January 25, 1973, giving as her reason the fact that she felt that she was being discriminated against in salary because of her sex and age. She was 23 years old. Before resigning she sought to have the situation corrected by pointing out to her superiors what she considered to be the unfair discrimination against her in the salary area.

Evidence presented by Mr. Bayless, the employer's representative, at the hearing showed the following

salary and experience levels among the persons doing the same job as claimant:

| Employe | Monthly Salary | Experience |
| --- | --- | --- |
| Jack Gasser | $1,200 | 30 years |
| Margaret Green | 615 | 26 years |
| Al Hibbart | 1,000 | 15 years |
| Eric Kokko | 1,100 | 28 years |
| Bob Mohlman | 1,100 | 21 years |

In addition, John Mullser, a "field trainee," worked as a sales correspondent for a time at a starting salary of $750. He was the only "field trainee" who had ever worked as a sales correspondent as part of his training.

From the above facts it is obvious that wide disparity in salary levels did exist in claimant's department. Mr. Bayless attempted to justify claimant's lower salary by explaining that she had much less experience than others in the department. But he admitted that there was no set salary schedule or definite policy of relating salary to seniority in the department. When asked why Mrs. Green, the other woman employed as a sales correspondent, with 26 years' experience, was making much less than the men, he explained that she had worked from 1945 to 1967, not worked for a year, and then worked from 1968 to the present. But Jack Gasser, the highest paid individual in the department, also did not work for Boise Cascade for one or two years and had only been back with the company since 1967. Mr. Bayless testified that Gasser's seniority with the company dated from 1965 or 1967 and when asked what explained the salary differential of $585 between the two, he stated:

"Well, basically because of what — or Mr.

Gasser's positions were prior to that and what he had earned in income in different positions."

Mr. Bayless testified that all of the workers in this department had basically the same duties and were all at about the same level of competence. No claim is made that the men had more responsibility than the women. There had been five sales contests among the employes in the department while claimant worked there and she won them all. From the foregoing it is clear that there was substantial salary discrimination by the employer between claimant and the men.

Given the fact that discrimination did exist, the question is whether such discrimination is "good cause" for voluntary termination of employment within the meaning of ORS 657.176.

■ We begin by noting that discrimination on the basis of sex is illegal under both federal[1] and Oregon[2] law.

_____

[1] 42 USC § 2000e-2. Unlawful employment practices:

"(a) Employer practices.

"It shall be an unlawful employment practice for an employer—

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin * * *

"* * * * * *"

[2] ORS 659.030:

"For the purposes of ORS 659.010 to 659.110, it is an unlawful employment practice:

"(1) For an employer, because of the * * * sex * * * of any individual * * * to discriminate against such individual in compensation * * *.

"* * * * * *".

"Good cause" is not defined in the Oregon Unemployment Insurance statute, but it has been defined elsewhere as

"* * * such a cause as justifies an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed; the quitting must be for such a cause as would reasonably motivate in a similar situation the average able-bodied and qualified worker to give up his or her employment with its certain wage rewards in order to enter the ranks of the compensated unemployed. * * *

"* * * In the final analysis, the question of what is good cause must be determined in the light of the facts of each particular case." (Footnotes omitted.) 81 CJS 253-54, Social Security and Public Welfare § 167.

We have found no Oregon cases construing the "good cause" provision. However, in *Gilbert v. Hub City Iron Works,* 137 So 2d 359 (La App 1962), all employes of a certain type received raises except the claimant. He was told that he was "in bad with the company" because of a workmen's compensation claim. He resigned and was awarded unemployment compensation. The court stated:

"We are of the opinion that the action of plaintiff's employer in refusing a raise to plaintiff while allowing it to the other employees was arbitrary and discriminatory under the circumstances of the instant case, and that plaintiff was justified in leaving the employment of his employer and that he left his employment for a good cause connected with his employment." 137 So 2d at 360.

Arbitrary and discriminatory wage practices were held to be "good cause" for voluntary termination. The same court in a later case stated in dicta:

"* * * [M]ere dissatisfaction with working con-

ditions does not constitute 'good cause' for quitting the employment, unless the dissatisfaction is based upon discriminatory or unfair or arbitrary treatment * * *." *McGinnis v. Moreau,* 149 So 2d 188, 190 (La App 1963).

In *Indust. Com. v. McIntyre,* 162 Colo 227, 425 P2d 279 (1967), the claimant was transferred from the mail room to the file room so that she could be replaced by a man. She considered this a demotion. In the file room she was forced to stand all day while other employes had desks and chairs. She resigned and the court held that she was entitled to unemployment benefits since she was forced to work under conditions not prevailing among her peers.

The Pennsylvania Commonwealth Court, after finding no evidence to support a charge of racial discrimination, said:

"* * * [W]e want to make it clear that although the Unemployment Compensation Law does not specifically refer to racial discrimination, if the record had disclosed substantial evidence indicating racial discrimination to be the compelling and necessitous cause for her voluntary termination of employment, she would have been entitled to unemployment compensation benefits. * * *" *James v. Unempl. Comp. Bd. of Review,* 6 Pa Commw 489, 492-93, 296 A2d 288 (1972).

The Supreme Court of Indiana has also indicated that discrimination between employes might constitute "good cause." *National Furn. Mfg. Co. v. Review Board, etc,* 131 Ind App 260, 170 NE2d 381 (1960).[9]

---

[9] The California courts have split over the meaning of "good cause." In King v. California Unemployment Ins. Appeals Bd., 25 Cal App 3d 199, 101 Cal Rptr 660 (1972), the First District Court held that a claimant who resigned when he was told he must shave

■ It is clear from the above survey of case law from other jurisdictions that discrimination may constitute "good cause" for voluntarily terminating employment. Respondent argues that, since there are other forums for resolving some of the problems of discrimination, this court should rule that the Employment Division need not be concerned with discrimination, that it is not the purpose of the Employment Division Law to solve such problems.

■ The objective of the Employment Division Law is to provide protection for workers who have become unemployed. Since claimant is unemployed, she should be compensated unless she is disqualified. The claim of disqualification is that she quit without good cause. We find no provision in the statute which would require claimant to exhaust other possible remedies before resigning her position. Although she could have taken action against the employer under the Civil Rights

off his beard was entitled to unemployment benefits. To deny such benefits would involve the state in an infringement of the claimant's First Amendment rights. In Warriner v. California Unemployment Ins. Appeals Bd., 32 Cal App 3d 353, 108 Cal Rptr 153 (1973), the Second District Court, in a two-to-one decision, held that

"* * * the purpose of that act was purely economic * * *. An employee who, as was the case with petitioner, is still guaranteed full economic compensation by her employer does not show 'good cause' for rejecting that compensation because of reduction in title or because of discrimination, legal or illegal." 108 Cal Rptr at 157.

For purposes of decision the court assumed that discrimination had been proven. 108 Cal Rptr at 156. The strong dissent pointed out that the majority ignored the King case and Cal. Portland Cement Co. v. Cal. Unemp. Ins. Appeals Board, 178 Cal App 2d 263, 3 Cal Rptr 37 (1960). In the latter case the court held that the termination for good cause need not even arise out of the employment situation, but may be personal to the claimant. 178 Cal App 2d at 272-73.

Act, ORS 659.010 through 659.115, we do not find any requirement that she must choose that alternative nor would the relief necessarily be the same.

Respondent cites *Amuchastegui v. Dept. of Employ.*, 4 Or App 456, 479 P2d 526, Sup Ct *review denied* (1971), for the proposition that where other tribunals exist for the airing of disputes, the Employment Division need not do so. *Amuchastegui* is not in point because it did not involve an illegal practice by the employer, but rather a private dispute between claimant and a union.

A claim of low wages has rarely been held sufficient to constitute good cause for voluntary termination by the employe. It has been held that there must be a showing that the compensation was below that prevailing in the area for workers similarly employed, *Toland v. Schneider*, 94 Idaho 556, 494 P2d 154 (1972), or that there is inequality of compensation within the class of workers to which claimant belongs. *Roby v. Potlatch Forests*, 74 Idaho 404, 263 P2d 553 (1953). Length of service with a company may be a valid basis for differences in compensation, but in this case the testimony demonstrated that length of service was not the criterion used. Mrs. Green had worked 26 years (one year interrupted) and was earning $615 per month while Mr. Gasser had worked 30 years (one or two years interrupted) and was earning $1,200. Also, Mrs. Green with 26 years' service received approximately the same amount as claimant when Mrs. Green had 24 years more service than claimant.

■ Certainly not every dispute between an employer and employe gives rise to "good cause" for voluntarily terminating employment within the meaning of ORS

657.176. In fact, the cases we have been able to find indicate that the "good cause" required for voluntary termination ought to be somewhat narrowly construed,[2] particularly in the compensation area. In this case, however, where the salary discrimination was so gross and so conclusively demonstrated, and the conclusion so compelling that the discrimination was based upon sex, we hold that petitioner had "good cause" to terminate her employment.

Because of our determination of this matter, it is not necessary to discuss claimant's constitutional argument.

Reversed and remanded.

---

[2] *See* Toland v. Schneider, 94 Idaho 556, 494 P2d 154 (1972).