Argued April 17, reversed and remanded May 20, 1974

STEVENSON, *Petitioner, v.* MORGAN ET AL.,
*Respondents.*

522 P2d 1204

*David H. Blunt,* Salem, argued the cause and filed the brief for petitioner.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

THORNTON, J.

Claimant seeks judicial review of a decision of the Employment Appeals Board reversing the action of the referee and the administrator, both of whom had allowed claimant unemployment benefits. The Board ruled that claimant was disqualified under ORS 657.176 (2)[1] because she had "left work voluntarily without good cause."

---

[1] ORS 657.176 (2) provides:

"An individual whose unemployment is due to:

"* * * * *

"(2) Having left work voluntarily without good cause * * *

"* * * * *

shall * * * be disqualified * * *."

The issue before this court is whether the Board's order is (1) lawful in substance and procedure and (2) supported by "reliable, probative and substantial evidence in the whole record * * *." ORS 183.480 (7).

Claimant voluntarily terminated her employment at the Sunn Musical Equipment Company, claiming that she could no longer withstand alleged mistreatment by her supervisor. The administrator determined after investigation that claimant had established "good cause" for leaving her job and allowed the claim. The employer then requested a hearing before the referee. The referee found that the supervisor was harassing claimant and that such harassment constituted "good cause" for claimant to leave her employment. The Employment Appeals Board reversed, finding that the claimant did not have "good cause" because she had not attempted to discuss the problem with the plant manager and was therefore disqualified under ORS 657.176 (2).

The referee found that claimant's supervisor was constantly finding fault with claimant's work; that the supervisor required claimant to use old animal glue on her job which was offensive to smell, more so than available new glue; that this caused claimant to become nauseated; that the supervisor was also treating claimant in an antagonistic and vindictive manner; that this treatment caused her to become anxious and nervous; and that all of this made claimant's working conditions intolerable and therefore constituted "good cause" to leave. Claimant testified that she once complained about her supervisor to a previous manager who told her that "you just have to live with it * * *." Claimant also offered evidence that whenever an employe attempted to see the plant manager the supervisor made it a

practice to follow the employe into the manager's office and would remain throughout the entire conversation.

The employer did not present contradictory evidence concerning the supervisor.

We must first determine what is the scope of review by the Employment Appeals Board of a decision of the referee.

ORS 657.275 provides that the Board may review decisions of the referee but is silent as to the scope of that review. However, ORS 657.280 states that the conduct of hearings before the referee and an appeal to the Board shall be in accordance with the regulations prescribed by the Administrator of the Employment Division as authorized by ORS 657.610.

■ The previous rules promulgated by the administrator provided that "* * * [i]n such review additional testimony will not be heard, nor the matter tried de novo." Oregon Administrative Rules, ch 471, § 41-010 (July 23, 1962). However, on June 21, 1972, the administrator promulgated a new § 41-010 deleting the language just quoted. We conclude from the foregoing that under the accepted rules of statutory interpretation the scope of review by the Board of decisions of the referee is de novo on the record made before the referee. *See, Swift & Co. and Armour & Co. v. Peterson,* 192 Or 97, 233 P2d 216 (1951).

Having determined the scope of review by the Board, we turn to the principal issue, namely, whether the Board's decision that claimant did not have "good cause" for leaving her employment should be sustained. It would appear that the initial determination of "good cause" for leaving employment is a mixed question of law and fact for the administrative agency. This deter-

mination is, of course, subject to review by the referee, the Employment Appeals Board, and ultimately by the courts as authorized by the statutes.

This court had occasion to consider the meaning of the term "good cause" as used in ORS 657.176 (2)① in *Fajardo v. Morgan*, 15 Or App 454, 516 P2d 495 (1973). There we held that claimant had established that her employer arbitrarily discriminated against her because of her sex by paying her less for the same work done by men. Consequently, claimant had "good cause" and was justified in leaving her employment. In the course of that opinion we stated:

> " 'Good cause' is not defined in the Oregon Unemployment Insurance statute, but it has been defined elsewhere as
>
> " '* * * such a cause as justifies an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed; the quitting must be for such a cause as would reasonably motivate in a similar situation the average able-bodied and qualified worker to give up his or her employment with its certain wage rewards in order to enter the ranks of the compensated unemployed. * * *
>
> " '* * * In the final analysis, the question of what is good cause must be determined in the light of the facts of each particular case.' (Footnotes omitted.) 81 CJS 253-54, Social Security and Public Welfare § 167." 15 Or App at 459.

■ "Good cause" may be said to be such cause as would similarly affect persons of reasonable and normal sensitivity, *Geckler v. Review Bd. of Ind. Emp. Sec. Div.*, 244 Ind 473, 193 NE2d 357 (1963), and is limited to those instances where the unemployment is caused by external pressures so compelling that a reasonably prudent person, exercising ordinary common sense and prudence, would be justified in quitting

work under similar circumstances. *Mikanowicz Unempl. Compensation Case,* 178 Pa Super 612, 115 A2d 846 (1955); *Green Unempl. Compensation Case,* 174 Pa Super 286, 101 A2d 119 (1953); *Citizens Bank of Shelbyville v. Industrial Com'n.,* 428 SW2d 895 (Mo App 1968). Thus, the applicable standards to determine "good cause" are standards of reasonableness as applied to the average man or woman, not the supersensitive person. *Uniweld Products, Inc. v. Industrial Rel. Com'n, etc.,* 277 So2d 827 (Fla App 1973). The question of "good cause" is therefore to be determined from the particular circumstances of each case. *Fajardo v. Morgan,* supra; *Fleischmann v. Rochester General Hospital,* 43 App Div2d 624, 349 NYS2d 185 (1973); *In re Tenenbaum,* 18 App Div2d 742, 235 NYS2d 419 (1962).

Having examined the entire record it is our opinion that the evidence offered by claimant before the referee established a prima facie showing of "good cause" for leaving her employment. *Cameron et al v. DeBoard; MacInnes et al,* 230 Or 411, 370 P2d 709 (1962); *von Poppenheim v. Morgan,* 9 Or App 495, 497 P2d 866 (1972). The employer then was under a duty to rebut the employe's prima facie case. Here, however, the employer did not present any contradictory evidence at the hearing concerning conduct of the supervisor.

There is substantial evidence to support the referee's findings that claimant's supervisor was arbitrarily harassing claimant, that this harassment made claimant's working conditions such that a reasonably prudent workman would find them to be intolerable and that therefore claimant had "good cause" to quit her job.

■ It is our conclusion that the Board was in error in denying the claim because the claimant had not once again gone to the plant manager to complain about the treatment by the supervisor.

While we would agree that a reasonably prudent employe who is being unjustly harassed by a supervisor has a duty to take up his or her grievance with management before voluntarily terminating employment, here claimant had already done so once before without success. Further there was evidence that no employe could see the plant manager without the supervisor following the employe into the manager's office and being present during any conversation between the complaining employe and the manager.

We therefore reverse and remand with instructions to reinstate the order of the referee and allow the claim.

Reversed and remanded.