Argued December 17, 1976, affirmed January 31, 1977

STONE, *Petitioner,*
*v.*
EMPLOYMENT DIVISION et al, *Respondents.*
(Agency No. 76-AB-669, CA 6634)
559 P2d 912

Robert E. Repp, Portland, argued the cause and filed the brief for petitioner.

James C. Waggoner, Portland, argued the cause and filed the brief for respondent Eastmoreland General Hospital.

No appearance for respondent Employment Division.

Before Schwab, Chief Judge, and Fort and Lee, Judges.

LEE, J.

**LEE, J.**

Petitioner seeks review of a decision of the Employment Appeals Board holding that he had voluntarily left his employment without good cause, and disqualifying him from the receipt of unemployment compensation benefits.[1] On appeal petitioner contends that the Board made a finding of fact and arrived at a conclusion, both of which were unsupported by substantial evidence in the record before it, and that its ultimate holding was therefore erroneous as a matter of law, i.e., "unlawful in substance."[2]

The Board entered the following "findings of fact and conclusions":

"(1) [Petitioner] worked for [Eastmoreland General Hospital] as an X-ray technician from March 4, 1973 until January 9, 1976. (2) His usual and customary hours were Friday from 8:00 a.m. to 4:30 p.m. at $6.68 per hour. (3) He was then on call from 4:30 p.m. until 8:00 a.m.

---

[1] "(1) An authorized representative designated by the administrator [of the Employment Division] shall promptly examine each claim to determine whether an individual is subject to disqualification as a result of his separation, termination, leaving, resignation, or disciplinary suspension from work or as a result of the individual's failure to apply for or accept work * * *.

"(2) If the authorized representative designated by the administrator finds:

"* * * * *

"(c) The individual voluntarily left work without good cause * * *

"* * * * *

the individual shall be disqualified from the receipt of benefits until he has performed service for which remuneration is received equal to or in excess of his weekly benefit amount in four separate weeks subsequent to the week in which the act causing the disqualification occurred.

"* * * * *

"(5) Notwithstanding the provisions of [subsection] (2) * * * of this section, if an individual who has been disqualified under [that subsection] establishes to the satisfaction of the administrator that he has, in not less than eight separate weeks, subsequent to the week in which the cause for disqualification occurred, been able to work, available for work, and been actively seeking and unable to obtain suitable work, and was registered for work * * * the administrator in that event may find him eligible for benefits subsequent to such eight weeks." ORS 657.176(1), (2) and (5).

[2] *See* ORS 657.282, 183.482(8).

Saturday and he received 75¢ per hour plus $8.25 for each patient he saw before 11:00 p.m. and $8.80 per person that he saw after 11:00 p.m. (4) On Saturday the [petitioner] would work from 8:00 a.m. until 4:30 p.m. at $6.68 per hour and would then be on the same call status as he was the Friday night between 4:30 p.m. and 10:00 a.m. with the same pay schedule. (5) On Sunday, he would work from 10:00 a.m. until 6:30 p.m. at $6.68 per hour and then be on an on-call status from 6:30 p.m. until 7:00 a.m. the following morning. (6) On January 9 the [petitioner] was told that his hours were to be changed and that he would [be] on duty a straight 40 hour shift from 7:00 a.m. Saturday until 11:00 p.m. Sunday at a rate of pay of $6.68 per hour. * * *

"(8) Several hospitals in the Portland metropolitan area staff their X-ray departments in a similar fashion as the one instituted by the employer on January 9. (9) Because the [petitioner] objected to this plan and felt that there would be substantial reduction in his income, he left. "* * * * *

"It does not appear that [petitioner's] income had been reduced to any substantial amount by the employer's change in hours. Instead of receiving pay for handling each person that was seen after a certain period of time, he was guaranteed 40 hours of pay at $6.68 per hour. This is at least an additional 16 hours per week at that rate of pay. In order to equal this amount, the [petitioner] would have had to have at least 10 patients who were seen during the on-call hours. The record does not establish that this had in fact occurred on any regular basis. Because it has not been shown that the change in hours would reduce the [petitioner's] pay, he has not shown that good cause exists for the separation from work."

Petitioner specifically challenges as unsupported by substantial evidence both the Board's finding that on January 9, 1976 he was told that he would thereafter be required to work a straight 40-hour shift "at a rate of pay of $6.68 per hour," and the conclusion based upon that finding that the change proposed by the employer would not have reduced his income by any "substantial amount."

Based upon a comparison of petitioner's earnings as an employe of Eastmoreland during 1975 with the income he might have earned *if* paid $6.68 per hour for a straight 40-hour shift, it is apparent that the modification in arrangements proposed by Eastmoreland would not have resulted in any reduction whatsoever in petitioner's income;[3] the key question is, therefore, whether there is substantial evidence in the record to support the Board's finding that petitioner was, in fact, told he would receive $6.68 per hour under the revised schedule of employment.

Petitioner himself testified that at the time he was notified of the proposed schedule change he was "under the impression that my hourly wage would be dropped," "that I was going to make a considerable amount less per hour." The testimony of Mr. Peterson, petitioner's former supervisor and the individual who explained the change to him on January 9, is, however, contradictory to that offered by petitioner. Mr. Peterson indicated that the revision of petitioner's work schedule did not include any reduction in salary, and, more specifically, that he did not tell petitioner he would be paid less than $6.68 per hour as a result of the change in schedule.

"Substantial evidence" has been described as "such proof as a reasonable mind would employ to support a conclusion * * *," *Henzel et al v. Cameron et al,* 228 Or 452, 464, 365 P2d 498 (1961), or "that evidence which, in a jury case, would preclude the court from directing a verdict * * *," *Cantrell v. Employment Division,* 24 Or App 215, 217, 545 P2d 143, Sup Ct *review denied* (1976).[4] Found to be credible by the referee who had an

---

[3] Petitioner earned approximately $13,765 as an employe of Eastmoreland during 1975; at $6.68 per hour he would have earned approximately $267 per 40-hour week or $13,884 per year absent any overtime.

[4] *See also Western Amusement v. Springfield,* 274 Or 37, 545 P2d 592 (1976); *Bay v. State Board of Education,* 233 Or 601, 378 P2d 558, 96 ALR2d 529 (1963); *Wilton v. Employment Div.,* 26 Or App 549, 553 P2d 1071 (1976).

opportunity to observe Mr. Peterson as a witness,[5] his testimony alone provides "substantial evidence" in support of the Board's finding that petitioner was told that he would be paid $6.68 per hour for the proposed 40-hour shift; we are, therefore, bound by that finding.

The Board's ultimate conclusion that petitioner voluntarily left work without "good cause" was not, therefore, "unlawful in substance."[6]

Affirmed.

---

[5]The referee specifically noted that he was "not convinced that the [petitioner] would have suffered a substantial loss in pay [had he remained at Eastmoreland]. He would be guaranteed an additional 16 hours a week *at $6.68 per hour * * *.*" (Emphasis supplied.)

[6]*See Wilton v. Employment Div., supra; Glennen v. Employment Division,* 25 Or App 593, 549 P2d 1288 (1976); *Carson v. Employment Division,* 25 Or App 589, 550 P2d 463 (1976); *Koach v. Employment Division,* 25 Or App 585, 549 P2d 1301, Sup Ct *review denied* (1976); *Wright v. Employment Division,* 24 Or App 323, 545 P2d 613 (1976); *Weidert v. Employment Division,* 22 Or App 474, 539 P2d 1116 (1975). *Compare Luoma v. Employment Div.,* 27 Or App 913, 558 P2d 366 (1976); *Grigsby v. Employment Div.,* 24 Or App 499, 546 P2d 788 (1976); *Fajardo v. Morgan,* 15 Or App 454, 516 P2d 495 (1973).