THORNTON, J.,
dissenting.
Claimant appeals from an adverse determination of the Employment Appeals Board. The Board affirmed the decision of both the referee and the Employment Division that claimant was disqualified from receiving *[1282] unemployment benefits on the ground that she voluntarily left work without "good cause.” ORS 657.176(2). The majority has affirmed the Board on the basis of this court’s holding in McCain v. Employment Division, 17 Or App 442, 522 P2d 1208 (1974).
Claimant does not challenge the findings of fact made by the referee, so the issue of "good cause” becomes one of law. Therefore, our review is not for substantial evidence but, rather, we exercise our independent judgment. Baker v. Cameron, 240 Or 354, 360, 401 P2d 691 (1965); Chamblee v. Employment Div., 23 Or App 53, 541 P2d 165 (1975).
The undisputed facts may be summarized as follows:
Claimant was employed by the City of Salem from February 3, 1975 until March 15, 1977. In August 1975 she was promoted to the position of Maintenance Person I within the traffic signal department. This position had been held only by men in the past and, in fact, many men in the workshop objected to claimant’s promotion. Over the course of the year and a half that claimant worked for the city in this position she complained of frequent problems with two male coworkers with whom she was often required to work. Both of the workers made it clear to claimant and her supervisor that they did not approve of a woman working in what they perceived as a man’s job. When claimant was on the job with these two men they would often make insulting remarks such as calling her a "floozy” or "snake.” They would ignore her on the job or refuse to give her instructions on how to perform certain tasks. This occurred despite the fact that the fieldwork claimant did with these men was a necessary part of her on-the-job training. On heavy tasks for which it was customary for employes to assist each other, these male co-workers would refuse to help claimant, although they would help each other. The men frequently would tell claimant’s supervisor that she was too weak to do the job. Claimant herself *[1283] complained to her supervisor several times per month about the conduct of the two male co-workers. The supervisor’s response would be to "let it go in one ear and out the other” or to "toughen up her skin,” because he felt a woman should expect some hostility when she was working in a man’s job. He would call the male workers in and tell them to ease off, but his warning would be effective for only a few days. As time went on the situation worsened, but the supervisor did not take any additional action against the male workers. Instead, he would warn the males and reassign the claimant to the shop.
Good cause has been defined as "such cause as would compel a reasonably prudent person to quit under similar circumstances.” Brotherton v. Morgan, 17 Or App 435, 438, 522 P2d 1210 (1974). One circumstance which may provide good cause to voluntarily leave employment is undue harassment by fellow employes. McCain v. Employment Division, supra at 446.
The referee relied upon McCain v. Employment Division, supra, to support his decision that claimant did not leave voluntarily with good cause. In McCain we stated:
■ "* * * Discrimination on the basis of sex is an unlawful employment practice. OES 659.030; 42 USCA § 2000e-2 (1974); Fajardo v. Morgan, [15 Or App 454, 516 P2d 495 (1973)] supra at 459. This does not mean, however, that an employer’s 'sexist’ attitude, by itself, is an unlawful employment practice or such other cause as would constitute 'good cause’ for a female employe to quit. ’Good cause’ would exist only if this ’sexist’attitude produced some actual discrimination, undue harassment, or other grievous cause of reasonable foundation, evidence of which must appear in the record. [Citing cases.]” 17 Or App at 445-46. (Emphasis supplied.)
In McCain we concluded that the evidence of a "sexist” attitude on the part of the employer was insufficient to *[1284] constitute good cause.[1] believe this case differs from McCain. The general sexist attitude present in McCain also exists in the instant case, but so do recurring specific acts constituting direct harassment of the claimant. The claimant was frequently insulted, criticized and ignored by two co-workers without justification. When she sought assistance from the supervisor his response was either to suggest that she toughen up, or take her off fieldwork, which was an aspect of her on-the-job training. The fact that the complaints and actions of the co-workers did not affect claimant’s performance ratings or good standing with her supervisor does not make them less onerous and harassing.
I conclude that the claimant left the job with good cause after making repeated efforts to remedy the situation, and is entitled to unemployment benefits.[2]

The only evidence of a sexist attitude was a collection of cartoons and posters depicting women in varying degrees of nudity, and statements of male co-workers that they liked the pictures. The concurring opinion noted that the cartoon she most objected to was in the men’s lunchroom, an area where claimant was not required to go, and that claimant in effect sought out the harassment.

In addition to claimant’s frequent complaints to her supervisor, she filed a grievance with her union when one of the male co-workers who was married became more insulting because she rejected his personal advances. The matter was handled at an informal hearing with the claimant, her co-workers, their supervisor and a union representative. Since the supervisor and union representative did not want to jeopardize the male worker’s employment opportunity with the county sheriff, he was asked to apologize.