Argued July 21, affirmed August 22, 1978

O'BRIEN, *Petitioner,*
*v.*
EMPLOYMENT DIVISION et al, *Respondents.*
(No. 78-AB-249, CA 10596)
582 P2d 841

David W. Hittle, Salem, argued the cause for petitioner. With him on the brief were Dye & Olsen and Mike Dye, Salem.

Kathleen A. Dodds, Certified Law Student, Salem, argued the cause for respondent Employment Division. On the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solictor General, Salem.

No appearance for respondent Oregon Lung Association.

Before Schwab, C. J., and Thornton, Tanzer and Buttler, Judges.

THORNTON, J.

## THORNTON, J.

This is a petition for judicial review of a decision of the Employment Appeals Board (Board) affirming the decision of the referee denying claimant unemployment benefits. The Board ruled that claimant was disqualified under ORS 657.176(2)[1] because she had "voluntarily left her work without good cause."

Claimant contends that she quit her employment due to "an erosion of integrity and credibility" by the employer and that this constituted "good cause" for leaving as a matter of law.

The administrator of respondent Employment Division agreed and ruled in favor of claimant.

There is no substantial dispute as to the essential facts.

Claimant worked in the Salem regional office of the Oregon Lung Association, whose headquarters is in Portland, as Director of Community Organization. Her immediate supervisor in Salem, and Director of the Salem (Willamette) region, was Mable Shiffer. Both in turn were under the supervision and direction of the state headquarters and the state executive director, Max Mehlhaff.

---

[1] ORS 657.176(2) provides:

"(2) If the authorized representative designated by the assistant director finds:

"(a) The individual has been discharged for misconduct connected with his work, or

"(b) The individual has been suspended from work for misconduct connected with his work, or

"(c) The individual voluntarily left work without good cause, or

"(d) The individual failed without good cause to apply for available suitable work when referred by the employment office or the assistant director, or

"(e) The individual failed without good cause to accept suitable work when offered to him,

the individual shall be disqualified from the receipt of benefits until he has performed service for which remuneration is received equal to or in excess of his weekly benefit amount in four separate weeks subsequent to the week in which the act causing the disqualification occurred."

In October 1975 through the initiative and efforts of Mrs. Shiffer, a grant was obtained from the Walton Foundation, a Salem-based and Salem-oriented charitable trust, to purchase a "memory" typewriter for use in the Salem office of the Association. The grant was conditioned at least tacitly on keeping the equipment in the Salem office. Mr. Mehlhaff, however, favored moving it to Portland for certain practical reasons.

A lengthy dispute developed between Mr. Mehlhaff and Mrs. Shiffer as to whether the equipment should actually be kept and used in Portland rather than in Salem. An impasse resulted, Mehlhaff refusing to proceed with the purchase of the equipment and Mrs. Shiffer protesting the proposal to move it to Portland. The controversy dragged on. It finally escalated into a clash between the Salem board of directors and the state board of directors in Portland. The Salem board agreed with Mrs. Shiffer that moving the proposed purchase to Portland would amount to a breach of faith with the Foundation. A divided state board apparently sided with Mehlhaff. Mehlhaff thereupon discharged Mrs. Shiffer. The local board then demanded that the state board of directors discharge Mehlhaff also. When the executive committee of the state board on a tie vote failed to do so, the members of the local board then tendered their resignations en masse.[2]

Approximately one month later, claimant, who had been an assistant and close associate of Mrs. Shiffer for some eight years in the Salem office, tendered her

---

[2]There is also a reference in the record to another dispute which occurred about this same time. This involved the proposed use of Association funds and staff time for Salem staff members to attend the national annual meeting of state lung associations. Some of the Salem staff apparently requested permission to attend this meeting. When Mehlhaff denied this request, Mrs. Shiffer stated that she wished to attend at her own expense. Mehlhaff's response to this was that she could attend at her own expense but would have to use her regular vacation time in doing so, rather than office time. Following this decision Mehlhaff testified "the next thing I began receiving calls and—letters from volunteers [of the Region]—uh—second guessing this decision."

resignation. In a letter of resignation she stated in part that she did not feel that the Association "has kept the trust of its donors"; that she felt "compelled to pursue other avenues to serve my community and continue my career."

In submitting her claim to the Employment Division, claimant stated:

"I left the Oregon Lung Assn. after eight years of service because of philosophical differences and because the management situation had deteriorated to an impossible condition of conflict and questionable practices. My immediate superior was fired without cause by the Executive Director. The statewide Executive Committee then failed on a tie vote to fire the Exec. Director. So our Willamette Region Board of Directors and volunteers resigned en masse. (See attached minutes, letters and editorial). In addition, some funds which had been donated for a specific purpose a year earlier were not spent for that purpose. (In fact, since I left, the foundation which donated the money has asked for its return.)

"I could not in good conscience continue working under such circumstances."

The record indicates that subsequently when the Foundation declined to accede to Mehlhaff's request to allow the equipment to be used in Portland the employer returned the funds.

The applicable rule was stated in *Stevenson v. Morgan,* 17 Or App 428, 522 P2d 1204 (1974), in these words:

" 'Good cause' may be said to be such cause as would similarly affect persons of reasonable and normal sensitivity * * * and is limited to those instances where the unemployment is caused by external pressures so compelling that a reasonably prudent person, exercising ordinary common sense and prudence, would be justified in quitting work under similar circumstances. * * * Thus, the applicable standards to determine 'good cause' are standards of reasonableness as applied to the average man or woman, not the supersensitive person. * * * The question of 'good cause' is therefore to be determined from the particular circumstances of each case. * * * [Citations omitted.]"

There is substantial evidence to support the referee's findings and conclusions (which were adopted in toto by the Board), that claimant voluntarily left her work without good cause; that this work was suitable

> "* * * even though the employer may have made errors in judgment or discretions concerning when to purchase the memory typewriter and where to use it. Claimant was not directly involved in obtaining the donations and her integrity was never in question. * * *"

Claimant's dissatisfaction with her employer's handling of Association business, including the typewriter transaction, falls short of meeting the test for determining "good cause" spelled out in *Stevenson.*

The Board's findings of fact are supported by the requisite amount of evidence and its conclusion based on those findings is correct as a matter of law. *See, Baker v. Cameron,* 240 Or 354, 358 et seq, 401 P2d 691 (1965).

In conclusion, where, as here, claimant is not required to perform unconscionable acts, there is not "good cause" unless the employment situation is so morally offensive that remaining would be intolerable to a reasonable person. While claimant had sincere conscientious objections to the actions of her superior as outlined above, these actions did not constitute "good cause" for resigning her employment as that term is used in ORS 657.176(2). *Accord: Brotherton v. Morgan,* 17 Or App 435, 522 P2d 1210 (1974); *McCain v. Employment Division,* 17 Or App 442, 522 P2d 1208 (1974). *Cf., Garrelts v. Employment Division,* 21 Or App 437, 535 P2d 115 (1975).

Affirmed.