## Edward WOODUS *v.* DIRECTOR OF LABOR and WEYERHAEUSER, INC.

E 81-55                                        621 S.W. 2d 869

### Court of Appeals of Arkansas
### Opinion delivered September 30, 1981
[Rehearing denied November 4, 1981.]

*Ben Johnson,* for appellant.

*Bruce Bokony,* for appellees.

MELVIN MAYFIELD, Chief Judge. This is an appeal from the Arkansas Board of Review. Appellant was employed by Weyerhaeuser, Inc. He was discharged for being the aggressor in a fight on company property. Under a contract between the company and appellant's union this is grounds

for discharge. There was testimony that appellant and another employee were working together; that appellant made an insulting remark to the other employee who replied in a like manner and was immediately hit by appellant.

The appeal tribunal found appellant guilty of misconduct under Section 5 (b) (2) of the Employment Security Law, Ark. Stat. Ann. § 81-1106 (b) (2) (Repl. 1976). The board of review adopted the decision of the tribunal. The appellant does not agree that the evidence supports this decision and specifically contends that he was not really fired for misconduct but because of racial discrimination.

This contention grows out of the fact that a "few years" ago a white employee by the name of Harness was drinking on the job, took a swing at a black supervisor, and, as he was leaving the plant, crashed his vehicle into a company bridge. Harness was not discharged even though he was guilty of two offenses which were grounds for discharge under the union contract. Thus, reasons appellant, since he is black and the co-worker with whom he had an altercation is white and Harness was white and his supervisor black, the difference between the treatment of the two employees must involve racial discrimination.

On Weyerhaeuser's behalf, there was testimony that Harness received a reprimand in lieu of discharge because he had been a good employee for a number of years, but had a drinking problem; that at the request of his supervisor and a number of people from his union he was given a thirty-day suspension instead of termination.

While there is substantial evidence to support the decision as to misconduct, the decision of the appeals referee stated:

Whether or not the employer may have been more lenient in punishing a white employee who was allegedly guilty of an offense at least as serious as the offense committed by the claimant, who is black, is a question which has been properly referred to the EEOC [Equal Employment Opportunity Commission] for

their determination. This question does not alter the fact that the claimant did strike a co-worker which is an act of misconduct in connection with the work within the meaning of Section 5 (b) (2) of the Law.

It may be that the referee thought that appellant's misconduct under Section 5 (b) (1) of the Employment Security Law disqualified him from benefits even if the employer's punishment was infected with racial discrimination. While we have not been cited a case which directly involves this point, we think cases cited by appellant make clear the resolution of this issue.

In *McDonald* v. *Santa Fe Trail Transp. Co.,* 427 U.S. 273, 96 S. Ct. 2574, 49 L. Ed. 2d 493 (1976), three employees, two white and one black, stole some antifreeze being shipped to Santa Fe and only the white employees were fired.

The United States Supreme Court held that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 (a) (1), prohibits the discharge of any individual because of such individual's race. In discussing the matter the court said that while "misconduct may be a legitimate basis for discharge, it is hardly one for racial discrimination." The court also pointed out that it had held in a previous case that an employer was not required to rehire an employee who had engaged in unlawful activity against it, but that the employer was not permitted to use the employee's misconduct as a pretext for discrimination, and that an employee making such a claim must be afforded a fair opportunity to show that the stated reason for his rejection was in fact pretext. Especially relevant to such a showing, the court held, would be evidence that employees of one race involved in acts of comparable seriousness were retained or rehired while employees of another race were discharged.

In *Corley* v. *Jackson Police Department,* 566 F. 2d 994 (5th Cir. 1978) the court said that where the plaintiff alleges that the misconduct justifying the discharge is in fact a pretext for discrimination the order and burden of proof are as follows:

1. The plaintiff must present a prima facie case of racial discrimination;

2. The employer then has the burden of proving, by a preponderance of the evidence, that legitimate, nondiscriminatory reasons existed to support his action;

3. The plaintiff then has the burden of proving by a preponderance of the evidence that the employer's articulated reason was a pretext for discrimination.

While both of the above cases were suits brought directly against the employer, the principle involved has been applied in unemployment benefits cases. In *Taylor* v. *Unemployment Comp. Board of Review*, 378 A. 2d 829 (Pa. 1977), the court held that an employee who left his job after suffering through three years of repeated incidents of racial prejudice was entitled to unemployment benefits because his termination was "with cause of a necessitous and compelling nature." And in *Fajardo* v. *Morgan*, 516 P. 2d 495 (Or. App. 1973), an employee quit her job because women in her department were paid salaries substantially less than male employees. The court held that such discrimination was prohibited by 42 U.S.C. § 2000e-2 (a) (1) and that the appellant had good cause for leaving her work and was entitled to unemployment benefits.

Applying the above cases to the case at bar, we believe that this matter should be reversed and remanded to the board of review for a new hearing with opportunity for a full development of the issue of racial discrimination. After the hearing the board of review shall make new findings of fact and conclusions, including those relating to the issue of discrimination, which shall be filed, together with a certified transcript of any additional record, with the clerk of this court.

CRACRAFT and CORBIN, JJ., dissent.

GEORGE K. CRACRAFT, Judge, dissenting. While I fully agree that the majority opinion correctly states the law on this subject, I cannot agree with the application they have

made of it to the facts here present. The appellant does not contend that he was not guilty of misconduct or that the company rules would not ordinarily absolve the person he assaulted. He argues instead that he was not discharged because of that misconduct but because of his race, and that the employer's articulated reason for his discharge was a mere pretext for discrimination. The burden was upon him to prove this by competent evidence relevant to the issue as tending to make that proposition either more or less probable.

Evidence of past comparable incidents is certainly competent to prove pretext for discrimination. However, I agree with the referee and the Board of Review that a single, isolated incident which occurred three years prior to appellant's discharge with no connecting evidence of managerial conduct in the interim was too remote to be relevant to the issue then before them for determination. This was the ruling the referee made at the time the evidence was offered and I would hold that it was a correct and proper one. The majority remands the matter for the Board of Review to consider that testimony in making a new determination. I respectfully dissent.

I am authorized to state that Corbin, J., joins in this dissent.