Argued and submitted April 25, 1983, reversed and
remanded for reconsideration January 4, 1984

# LEWIS,
*Petitioner,*

*v.*

# EMPLOYMENT DIVISION OF THE STATE OF OREGON et al,
*Respondents.*

(82-AB-1384; CA A25661)

673 P2d 1376

Amy Veranth, Portland, argued the cause for petitioner. With her on the briefs was David S. Tilton, Law Student, Portland.

William F. Nessly, Jr., Assistant Attorney General, Salem, waived appearance for respondent Employment Division.

Joyce Bernheim, Portland, argued the cause for respondent Tektronix. On the brief were Richard S. Gleason and Stoel, Rives, Boley, Fraser and Wyse, Portland.

304

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

The issue in this unemployment compensation case is whether the Employment Appeals Board (EAB) is entitled, without explanation, to reject as not credible the only evidence on the central issue in the case when the referee has implicitly found that evidence to be credible. We hold that EAB must explain its credibility finding, that in reaching the finding it must specifically describe the weight it gives to the referee's determination and that its failure to do either in this case requires us to reverse and remand its decision denying claimant unemployment benefits.

Claimant worked as a janitor for Tektronix for two years. Because of brain damage from an automobile accident, he has memory losses and occasionally becomes disoriented. He is taking medication for these problems, but it does not always control them. In October, 1981, he verbally quit his job but showed up two days later as though nothing had happened; he was continued as an employe. At that time, and again in February, 1982, he received warnings for excessive absenteeism, which apparently was the result of his illness. He was absent again in early April. On April 6, he returned to work bringing a note from a nurse indicating that his illness had "slightly exacerbated" but that he was again stable. He left work without explanation or notifying anyone on April 7 and was terminated. At the hearing he testified that he has no memory of what happened that day at work. His best explanation was that he had again become disoriented and unaware of what he was doing.[1]

The Assistant Director for Employment found that claimant left work because of illness and that his doing so was not an intentional disregard of his employer's best interests. He therefore awarded claimant unemployment benefits. The referee affirmed the decision after a hearing, incorporating the findings and conclusion of the administrative decision by

---

[1] Petitioner was unrepresented at the hearing and made no argument. He stated his position most clearly in a letter seeking EAB reconsideration of the decision against him. Because the Assistant Director and the referee each found in his favor, and because the referee limited testimony at the hearing to what happened rather than to his explanation, he had had no previous occasion to explain his position thoroughly.

reference.[2] EAB reversed, one member dissenting. It noted that claimant claimed that his absences were caused by his illness and that his leaving his job early was caused by his condition and thought disorientation. It found him not credible in this regard. It then stated:

> "On the basis of the earlier warning and probation, the claimant should have known that it was not permissible for him to leave the job without prior permission. Our finding of misconduct is not based upon the claimant's absence due to illness but his failure to notify the employer that he was leaving. It is on this basis that we impose disqualification from benefits."

The problem with EAB's rationale is that it does not adequately address the evidence, nor does it explain its credibility determination. The quoted paragraph simply ignores claimant's explanation, which the referee apparently accepted, that his leaving early and his failure to notify anyone that he was leaving were themselves products of his illness. If claimant is correct, he did not *wilfully* (which apparently means the same in this context as intentionally) disregard his employer's best interests, because he was too disoriented to do anything wilfully or intentionally. The series of warnings claimant received and the general information about personnel policies that the evidence would justify EAB in finding that he also received would normally support its conclusion. The difficulty is that, if claimant's illness in fact caused him to be disoriented when he walked off the job, all the warnings and policies in the world would be meaningless in determining his intent; the disorientation would mean that he was not aware of them when he acted. Thus, EAB's finding

---

[2] Under ORS 657.176(2)(a), a claimant is disqualified for unemployment benefits if the claimant "[h]as been discharged for misconduct connected with work * * *." OAR 471-30-038(3) provides, in part:

> "* * * [M]isconduct is a willful [sic] violation of the standards of behavior which an employer has the right to expect of an employe. An act that amounts to a wilful [sic] disregard of an employer's interest, or recurring negligence which demonstrates wrongful intent is misconduct. Isolated instances of poor judgment, good faith errors, unavoidable accidents, absences due to illness or other physical or mental disabilities, or mere inefficiency resulting from lack of job skills or experience are not misconduct * * *."

We assume that the Assistant Director's finding, affirmed by the referee, that claimant did not act in "intentional disregard" of his employer's best interests refers to the "wilful disregard" standard of the rule.

that claimant is not credible in this respect is crucial to its decision, and it is neither logically supported nor explained.

Unlike some administrative agencies, EAB is not in itself an original factfinder. Rather, it reviews the factfinding of others. A hearing on an administrative determination of eligibility for unemployment compensation is held before a referee, who may affirm, modify, or set aside the administrative determination. The referee's decision is final unless an aggrieved party appeals it to EAB by filing an application for review. ORS 657.270. EAB then examines the record and affirms, modifies, or sets aside the referee's decision. In essence, EAB acts like a court with *de novo* review authority. *Stevenson v. Morgan,* 17 Or App 428, 431, 522 P2d 1204 (1974). On *de novo* review, appellate courts give particular weight to a trial court's credibility findings because of the judge's opportunity to see and hear the witnesss, and we have held that courts exercising *de novo* review authority over workers' compensation claims should give weight to the hearing officer's credibility findings for the same reasons, although the findings are not conclusive. *Hannan v. Good Samaritan Hosp.,* 4 Or App 178, 192, 471 P2d 831, 476 P2d 931 (1970), *rev den* (1971).

The question in this case is to what extent these general principles of *de novo* review apply to EAB's actions. The problem is not entirely one of first impression. In cases involving students claiming unemployment benefits, where the claimant's credibility was crucial, we have required the referee to make explicit findings on credibility and have required EAB, if it reverses a referee's finding that the claimant was credible, to state precisely what it found to be the facts and to explain how those facts lead to its conclusion. *Petro v. Employment Division,* 32 Or App 17, 23-24, 573 P2d 1250 (1978); *see also Bremer v. Employment Division,* 47 Or App 1131, 615 P2d 1170 (1980); *McCann v. OLCC,* 27 Or App 487, 556 P2d 973, (1976) *rev den* (1977). Without those findings at both levels, we are unable to review the order to determine whether it is supported by substantial evidence. *Petro v. Employment Division, supra.*

We believe the principles established in *Petro* are applicable whenever the claimant's credibility is crucial to the decision of the claim, including this case. While the referee

implicitly found claimant credible, he gave no explanation for his finding. EAB explicitly found claimant not credible, but it also gave no reason for its finding and made no effort to explain why it disagreed with the referee or what weight—if any—it attached to his determination.[3] Failure to focus clearly on claimant's credibility apparently led EAB to misunderstand the thrust of his case. We cannot, therefore, tell on this record whether EAB's decision is supported by substantial evidence; we must reverse and remand. If EAB on remand again chooses to find claimant not credible, it must explain its reasons in a way we can review.[4]

Reversed and remanded for reconsideration.

---

[3] The major reason for giving the referee's determination special weight is his ability to see and hear the witnesses. In this case, the hearing took place by telephone, so the referee did not see the witnesses. However, he did hear them, while EAB had only a transcript before it. His assessment of the claimant's credibility is therefore pertinent.

[4] We do not consider in this case what, if any, explanation an agency must give with regard to a hearings officer's *proposed* credibility findings when the agency has primary decision-making, rather than merely review, authority.