Argued and submitted May 6, reversed and remanded for reconsideration July 10, 1985

EXTON,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION et al,
*Respondents.*

(84-AB-1480; CA A33947)

702 P2d 1153

David S. Tilton, Coos Bay, argued the cause and filed the brief for petitioner.

Michael D. Reynolds, Assistant Attorney General, Salem, waived appearance for respondent Employment Division.

No appearance for respondent Southwestern Oregon Community College.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is an unemployment compensation case in which petitioner, a former custodian at Southwestern Oregon Community College, seeks judicial review of an order of the Employment Appeals Board reversing a referee's decision and holding that he was ineligible for unemployment compensation benefits because he had been disqualified for misconduct in connection with his work. We reverse and remand.

Petitioner was fired after he was found by his immediate supervisor in a dark broom closet. The supervisor thought petitioner was asleep. Petitioner had been reprimanded in the past for sleeping on the job. Petitioner insisted at the hearing that he was not asleep but was simply trying to deal with a headache which he feared was the precursor of an epileptic seizure. Employer acknowledged at the hearing that petitioner was subject to epileptic seizures.

The case boiled down to the question of whether the petitioner was asleep, on the one hand, or was awake but trying to ward off an epileptic seizure, on the other. The referee found, in pertinent part:

"(3) [Petitioner] is subject to epileptic seizures. (4) The [petitioner] has been instructed by his doctor to remove himself from all persons when he feels a seizure coming on and to remain so until the seizure is over. (5) On July 24, 1984, [petitioner] felt a seizure coming on. He went to a closet and locked the door and sat down and closed his eyes. (6) The [petitioner] steadfastly denies he was asleep when found in a sitting position by his supervisor on July 24, 1984. (7) In July of 1983, [petitioner] was found allegedly asleep in a broom closet by a supervisor. [Petitioner] was told this was not acceptable. He was not warned the next occurrence of sleeping on the job would lead to his discharge. (8) [Petitioner] was put on 30 days probation for work performance beginning about March 28, 1984. This probation was continued and in effect at the time of [petitioner's] discharge. * * * (10) Employer is aware of [petitioner's] medical problem concerning epileptic seizures. Employer gives [petitioner] time off when requested due to this problem. * * * (14) [Petitioner] was found to be a credible witness by the referee."

From the foregoing, the referee entered the following pertinent conclusions:

"Here, the employer has not established misconduct on

[petitioner's] part sufficient to disqualify him from receiving unemployment insurance benefits. The referee is persuaded [petitioner] was not sleeping when found in a closet on July 24, 1984. He was resting his eyes as stated * * *."

On review, EAB, one member dissenting, reversed the referee. EAB made only three findings, one of which was *pro forma,* one of which is probably not supported by evidence in the record and the third of which was: "On July 24, 1984[,] the [petitioner] was found sleeping on the job and he was discharged on that account." From the foregoing, EAB then reasoned:

"We disagree with the referee and conclude that [petitioner] was discharged for misconduct connected with his work. The evidence is clear that the [petitioner] had been warned about sleeping on the job. (In so noting, we do not mean to suggest agreement with the referee's theory that an employee must have been previously warned about such obvious dereliction of duty.) Notwithstanding the [petitioner's] non-persuasive explanation, the evidence preponderates to show that he was disregarding his duty and the employer's interest in the final incident."

It is the obligation of EAB, when faced with a direct finding on credibility by a referee, to explain fully the circumstances which lead it to disagree with the credibility determination. *See, e.g., Derochier v. Employment Division,* 70 Or App 521, 690 P2d 519 (1984); *Ashmore v. Employment Division,* 70 Or App 516, 690 P2d 522 (1984); *Steinkellner v. Employment Division,* 67 Or App 50, 676 P2d 941 (1984); *Lewis v. Employment Division,* 66 Or App 303, 673 P2d 1376 (1984). If EAB regards its present statement as satisfying the requirement of those cases, it apparently misreads them. Any reasoned or principled explanation for disagreeing with the referee's assessment of credibility is wholly lacking. Unless a better one can be constructed, there exists no justification for denial of unemployment compensation benefits in this case.

Reversed and remanded for reconsideration.