Argued and submitted May 6, 1985, reversed and remanded for reconsideration
January 8, 1986

GASPER,
*Petitioner,*

*v.*

ADULT AND FAMILY SERVICES DIVISION,
*Respondent.*

(5-2001-AL2754-3; CA A32864)

712 P2d 167

David C. Force, Eugene, argued the cause and filed the brief for petitioner.

Jeffrey Bennett, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

■ Petitioner seeks review of an order of the Adult and Family Services Division (AFSD) which denied her General Assistance (GA) benefits for the period January 9, 1984, through March 10, 1984. We hold that AFSD's order is not supported by substantial evidence and, therefore, reverse and remand for reconsideration.

In late 1983, petitioner was 24 years old, with an eight-year history of mental illness, including several hospitalizations. She supported herself with babysitting jobs and was attending Lane Community College under a federal grant. Various difficulties at the end of December provoked a recurrence of suicidal tendencies, and Dr. Wichser, her physician, again hospitalized her. While she was in the hospital, she saw Dr. Brown, a psychiatrist[1] whom she had seen during an earlier hospitalization. He determined that petitioner was unable to work and suggested that she apply for GA, giving her an AFSD form which he had filled out to support her application.

Petitioner applied for GA on January 9, 1984, while on a pass from the hospital. She left the hospital a few days later and began classes at Lane Community College, carrying 12 credit hours. However, she was unable to handle that load. She left classes several times and went to the nurse's office crying uncontrollably; she also missed entire class days. She eventually dropped the class which caused her the greatest stress and which constituted half of her total load.

AFSD denied petitioner's application for GA after its Medical Review Team (MRT) reviewed the application on February 2, 1984. It affirmed its denial after another MRT review on February 27, 1984. Petitioner then requested a hearing, which was held on May 10, 1984. At the hearing, petitioner testified that her condition was poor throughout January, February, and March but that it had improved significantly during April. She believed that it was again

---

[1] AFSD argues that nothing in the record shows that any of petitioner's attending physicians was a psychiatrist. It is correct that no document in the record specifically refers to Brown as a psychiatrist. However, Brown's report of his evaluation of petitioner on February 26, 1983, begins "[t]his is a psychiatric consultation," and there are other references in the record to petitioner's psychiatrist in a context which can refer only to Brown.

deteriorating at the time of the hearing. The hearings officer found that petitioner was capable of engaging in gainful employment by February 12, 1984, and thereby failed to meet the continuous 60-day disability requirement for GA eligibility. He therefore upheld the denial. He explained his findings as follows:

"General Assistance eligibility requires that the applicant have a physical or mental condition which prevents her from engaging in *any type of gainful employment for at least 60 days from the date of request* (Rule 461-05-311). Ms. Gasper did not present evidence showing that she met the unemployability requirement for at least 60 days from her date of request.

"Dr. Brown was of the opinion on January 6, 1984, while claimant was still hospitalized, that she would be unable to work for 60 days. Her hospital chart notes of January 9, 10, and 11 (the date of discharge) show that she was improving. She reported having flushed her supply of suicide drugs down the toilet. Her affect had improved from flat to supple. She had begun responding to staff and other patients and even occasionally initiating conversation. A few days after her discharge, she began attending two classes at Lane Community College. By February 2, 1984, Dr. Brown had modified his opinion to 'for the next 90 days patient will most likely be impaired for work.' On February 12, 1984, a doctoral candidate under the direction and supervision of a clinical psychiatrist [*sic*] administered BDI, MMPI, and SAD tests to claimant. 'The results suggest that Julie was experiencing a moderate degree of depression at the time of the interview . . . More generally, the results suggest that although Julie may not be particularly anxious socially, she may tend to avoid some people, and be impulsive of, and manipulative with others, while also being resentful of those who place demands upon her. She may also tend to act out her impulses in an inappropriate manner and experience little guilt over her actions when discovered.'

"This evidence suggests that Ms. Gasper was by early February recovered from her severe problems and was capable of engaging in gainful employment. Thus, there was not the required 60-day period of unemployability." (Emphasis in original.)

The question is whether the hearings officer's findings are based on substantial evidence in the record. *See Brown v. AFSD,* 75 Or App 98, 705 P2d 236, *rev den* 300 Or 477

(1985). The findings are supported by the report which the hearings officer quoted and by the MRT determinations. However, even ignoring the usual difficulties with the use of MRT reports in an AFSD hearing, *see Kuykendall v. AFSD,* 70 Or App 526, 690 P2d 517 (1984), the reports are of no value in this case. Such reports are never any better than the information on which they are based, and here that information was deficient. Brown misdated his January 6, 1984, report as January 6, *1983,* and MRT therefore believed that the information in it was stale. It based its February 2, 1984, rejection on its belief that petitioner was going to school, taking six credits and receiving financial aid. That, MRT said, showed her ability to be involved in gainful activity. Other evidence of which MRT was unaware, and which is uncontested, shows that petitioner was coping with her limited class load in, at best, a marginal fashion. In its February 27, 1984, report, MRT noted that it had received reports from a 1983 hospitalization.[2]

The other evidence in the record consists of petitioner's testimony concerning her condition and inability to function during the months in question, letters from a Lane Community College nurse and a college counselor which support the same view of her situation and express opinions that she was unable to work at that time, and a letter from her therapist, DeLapp, stating that her ability to work in January, February and March was questionable. In addition, there are AFSD report forms from Brown, dated January 6, and February 2, 1984, and from Wichser, dated February 9, 1984. In his January report, Brown stated that petitioner would not be able to work for 60 days, but probably would thereafter; in February, he said that she would likely be impaired for work for another 90 days. In petitioner's presence, Brown talked with her AFSD worker on the telephone on February 2; petitioner described Brown as red with anger over AFSD's delay in approving her claim. Wichser described petitioner as unable to work for at least 60 days and said that she was

---

[2] An MRT member had talked with Brown after the first determination; Brown had said that it would be disadvantageous for petitioner to stay on welfare, described her "serious suicidal gestures" as attention getting and stated that he did not want to hospitalize her. No other parts of the conversation were reported; the portions available related to Brown's preferred treatment rather than to petitioner's current condition.

totally unable to perform her normal functions with the possible exception of personal hygiene.

■ In short, the only evidence which indicates that petitioner was employable at any relevant time is the psychological evaluation on which the hearings officer ultimately relied. However, the evaluator had no pre-February 12 test by which he could determine petitioner's progress or to which he could compare the February 12 results. It is therefore impossible to know if petitioner's performance was better than it would have been a month earlier when, as the hearings officer implicitly found, she was unable to work. This evidence does not support the hearings officer's finding that petitioner was capable of working. The decision is not supported by substantial evidence in the record.[3]

Reversed and remanded for reconsideration.

---

[3] Petitioner had the burden to prove her eligibility. OAR 461-09-097(5). However, instead of simply relying on petitioner's failure to meet her burden, the hearings officer chose to make an affirmative finding that is not supported by the record. Remand is necessary. The hearings officer might also have disbelieved petitioner's evidence and therefore have found that she did not meet her burden. However, there is nothing in the order or the record which suggests that credibility was an issue in the hearings officer's mind. If it becomes an issue on remand, the hearings officer must articulate a rational basis for whatever credibility determinations he makes. See *Lewis v. Employment Division*, 66 Or App 303, 673 P2d 1376 (1984).