(No. 6438. December 9, 1937.)

M. A. PIERSTORFF, Respondent, v. GRAY'S AUTO SHOP, Employer, and AETNA CASUALTY & SURETY COMPANY, Surety, Appellants.

[74 Pac. (2d) 171.]

Weldon Schimke, for Appellants.

Durham & Hyatt, for Respondent.

HOLDEN, J.—This is an appeal by Gray's Auto Shop, employer, an Idaho corporation, and Aetna Casualty & Surety Company, surety of such employer, from a judgment of the district court reversing a decision of the Industrial Accident Board denying respondent compensation for an injury claimed to have been sustained by an accident on the evening of October 22, 1935, while claimant was working on a fender of an automobile in the shop of his employer.

Following the accident and on October 28, 1935, respondent filed with the Industrial Accident Board a report of the accident and a claim for compensation in which he stated that he was "Prying fender brace in place to hook last fender bolt in—Fender stick made of oak hard wood cracked and splinter from stick about size of darning needle penetrated (left) eye ball."

The testimony given by respondent at the hearing before the Industrial Accident Board concerning the accident is substantially as follows: That on the evening of October 22, 1935, he and his wife started to drive in the family automobile from their residence down to the fire station in Lewiston to have some life insurance papers witnessed; that as they passed the shop they saw a light and stopped and that respondent went in where he found V. A. Westfall, another stockholder and employee of Gray's Auto Shop; that Westfall witnessed an insurance paper; that shortly afterwards

Westfall left the shop and respondent, being then alone, went to the back end of the shop to get a drink; that in going to the back end of the shop to get drink he noticed a Chevrolet car and stopped to put a bolt in the fender brace of the car; that "Well, we have a fender stick, a notched stick that you pull up under the end of the fender to hold it in place, and I took one of these sticks. I had a light burning, and I put a block of wood on the tire and used this stick as a brace. I used one as a brace under the end of the fender and the other under the car, and I pried on this iron to get the holes to line up between the fender and the fender brace. I thought the stick broke and I fell against it. I don't know just what did happen, but it gave way some place and I fell forward and I got a stick in my eye. I don't know just what did happen. I don't know if I fell against the stick or 'whether the stick flew up''; that he put his hand to his eye and felt the splinter and reached up with his right hand and pulled it out; that he then went up into the office of the shop and picked up the phone and called his wife and told her he had hurt his eye, and that he was going to the hospital and she had better come down; that he left the shop and started across lots to the hospital, passing what is known as Andy's Service Station; that at or near the service station he got on the running-board of a car and the driver drove him to the hospital.

 Because respondent stated in his report to the Industrial Accident Board that the splinter entered his eye while he was prying the fender brace in place, and at the hearing he testified he did not know just how the accident happened, whether the splinter "flew up" into his face or whether he fell against the fender stick, appellants contend that "here we have two diametrically opposed statements as to the cause of this alleged accident," and, therefore, that the board was justified in denying respondent compensation.

In support of that contention, appellants cite and rely upon *Strouse v. Hercules Min. Co.*, 51 Ida. 7, 1 Pac. (2d) 203. An examination of that case will disclose that this court simply held that there was substantial evidence to support the board's finding that Strouse's disability was not due to

an accident, either when lifting timbers or operating a jack-hammer, but was due to pre-existing spinal curvature, and, therefore, that the findings of the board could not be disturbed on appeal, from which it follows that the Strouse case does not support appellants' contention.

Furthermore, it is not necessary, as contended by appellants, that a claimant prove the exact manner in which he is injured. The law does not require such certainty of proof, and to so hold would defeat the very purpose of the Workmen's Compensation Law. The statute must be liberally construed with a view to effect the object of the law and to promote justice. (*McNeil v. Panhandle Lumber Company,* 34 Ida. 773, 203 Pac. 1068.) Most accidents occur suddenly and in many and most unexpected ways and may result in such great bodily injury and intense pain that the injured workman is instantly confused and cannot possibly know just how he was injured, whether, for example, as claimed in the case at bar, by a sliver while prying with a fender stick, or by falling against the fender stick while prying. It is common knowledge that the eye is a most sensitive organ and a serious injury to it causes intense pain. The injury suffered by respondent was so great it resulted in the loss of his left eye and that it instantly caused intense pain can hardly be doubted.

It is the duty of the Industrial Accident Board, in passing upon the claim of an injured workman for compensation, to decide the controversy according to the preponderance of the evidence and the reasonable probability of the truth of the matter. (*McNeil v. Panhandle Lumber Co., supra,* page 783.) And as we said in *Roe v. Boise Grocery Company,* 53 Ida. 82, 89, 21 Pac. (2d) 910:

"This court held in the well-considered case of *Newman v. Great Shoshone & Twin Falls Water Power Co.,* 28 Ida. 764, 156 Pac. 111, that 'in a civil case it is not necessary that the facts upon which the verdict is based be established beyond a reasonable doubt. It is the duty of the jury to decide according to the preponderance of the evidence and the reasonable probability of truth.' And in the case of *Adams v. Bunker Hill etc. Min. Co.* (on rehearing), 12 Ida. 637, 89

Pac. 624, 628, 11 L. R. A., (N. S.) 844, this court said: 'There are very few things in human affairs, and especially in litigation involving damages, that can be established to such an absolute certainty as to exclude the *possibility*, or even some *probability*, that another cause or reason may have been the true cause or reason for the damage rather than the one alleged by the plaintiff. But such *possibility*, or even *probability*, is not to be allowed to defeat the right of recovery where the plaintiff has presented to the jury sufficient facts and circumstances surrounding the occurrence as to justify a reasonable juror in concluding that the thing charged was the prime and moving cause.' ''

Appellants also contend there is a conflict in the evidence as to how the accident occurred, that such conflict is substantial, and, consequently, the findings of the Board are final and conclusive and cannot be disturbed on appeal. The basis of the contention is: First, that the general manager of Gray's Auto Shop and the adjuster of the Aetna Casualty & Surety Company testified that they inspected the bolts running through the brace near the crown of the fender, and that the bolts were rusty, and that such testimony contradicted respondent's testimony to the effect that he put in new bolts. Second, that the general manager of Gray's Auto Shop testified that V. A. Westfall told him respondent had injured his eye on a ripsaw, that respondent having requested Westfall to inform the general manager of the accident, Westfall thereby became the agent of respondent and respondent was bound by what Westfall told the general manager about the accident, and that Westfall's statement to the general manager that respondent had injured his eye on a ripsaw contradicted respondent's testimony that he was injured in repairing the fender, and that such contradiction constituted a conflict in the evidence.

The record shows the inspection was made a considerable time after the accident occurred. There is no proof in the record, and none was offered at the hearing, that the fender was in the same condition at the time of the inspection as it was at the time of the accident. Admitting that the testimony of the general manager and adjuster may have

been competent, but not deciding it is, because we have grave doubts about the matter (*Goddard v. Enzler*, 123 Ill. App. 108, 114; *Eureka Coal Co. v. Braidwood*, 72 Ill. 625; *Davis Bros. v. Vandalia R. R. Co.*, 168 Ill. App. 621, 624), that fragmentary and negative item of testimony would not be sufficient to defeat the recovery of compensation.

Nor is that testimony sufficient to constitute a substantial conflict in the evidence. In *In re Larson*, 48 Ida. 136, 144, 279 Pac. 1087, it was urged that the findings made by the Industrial Accident Board and the district court were final and conclusive upon this court because there was *some* evidence to support such findings. This court held that in reviewing hearings before the Industrial Accident Board upon the question as to whether the evidence submitted sustains the findings of the board, the courts will consider the competency, relevancy, and materiality of the evidence for the purpose of determining whether there is substantial evidence to sustain the findings of the board, and that if the findings are clearly unsupported, as a matter of law, it is within the province of this court to set the findings aside. (See, also, *In re Hillhouse*, 46 Ida. 730, 271 Pac. 459; *McNeil v. Panhandle Lumber Company*, 34 Ida. 773, 203 Pac. 1068.)

That the conversation between Westfall and general manager Gray, in the absence of respondent, is pure hearsay and, therefore, incompetent, there is not the slightest doubt. (*Whitman v. McComas*, 11 Ida. 564, 570, 83 Pac. 604.) Hence, it created no conflict in the evidence. Nor did the mere fact respondent asked Westfall to tell the general manager that he, respondent, had been injured in an accident, constitute Westfall respondent's agent.

Appellants further insist that respondent made an admission against interest, that the admission is material, that it constitutes *some* evidence in support of the findings of the board, and that where there is *any* evidence supporting the findings the same will not be disturbed on appeal. That contention is based upon the following cross-examination of respondent:

"Q. Then, Mr. Pierstorff, I want to ask you if you remember a conversation in some part of Gray's shop, approximately

two weeks after this accident happened, at which Mr. Rolf was present, Dr. Rouse and yourself and in which Dr. Rouse inquired of Mr. Rolf why the insurance company was denying liability on this case, and in which Mr. Rolf told you that your ten year old boy had told Mr. Dempcy that the accident happened at your home while you were chopping wood and in which conversation you told Dr. Rouse in substance 'Well, the boy has spilled the beans.' Do you remember such a conversation?

"A. I remember talking to Rolf alone. Rouse wasn't there.

"Q. Was that the substance of the conversation at that time?

"A. That was after I came back from Spokane, before I had my eye removed. I asked him if he had seen Mr. Turner and he said he had just left there and I asked him what was wrong, that Mr. Turner told me on the telephone that he denied liability and something else.

"Q. Then Rolf told you?

"A. Then Rolf told you about my boy. He is nine years old, not ten.

"Q. But that is the substance of the conversation?

"A. Yes."

It will be noted when respondent was asked if he remembered the conversation claimed to have occurred in the presence of Dr. Rouse that he did not answer the question except to say: "I remember talking to Rolf alone, Rouse wasn't there." It will be further noted that immediately following that answer respondent was asked: "Was that the substance of the conversation at that time?" And that respondent, instead of answering the question either "yes" or "no," replied by stating the conversation which occurred in Gray's shop as he remembered it, saying: "That was after I came back from Spokane, before I had my eye removed. I asked him (meaning Rolf) if he had seen Mr. Turner and he (meaning Rolf) said he had just left there and I asked him (again meaning Rolf) what was wrong that Mr. Turner told me on the telephone that he denied liability . . . . " From which it is clear that when respondent answered "Yes" to the question, "But that is the substance of the conversa-

tion?" he was referring to the conversation he had with Rolf alone, and not to the conversation in which it was claimed he (respondent) had said in substance: "Well, the boy has spilled the beans."

That disposes of the contention of appellants that there is a substantial conflict in the evidence and that respondent made an admission against interest, which brings us to a consideration of the contention that the Industrial Accident Board was at liberty to disbelieve the testimony of respondent solely on the ground that he is a party and interested in the result of the case.

At the common law, persons interested in the event of an action, whether parties or not, were not permitted to testify, on the theory that they would likely commit perjury. In 1881 it was enacted by the territorial legislature (now secs. 16–201, 16–202, 16–203, I. C. A.), that all persons, without exception, otherwise than specified in later sections of the statute, who, having organs of sense, can perceive, and, perceiving, can make known their perceptions to others, may be witnesses and that neither parties nor other persons having an interest in the event of an action or proceeding are excluded. The purpose of the enactment of the statute was to remove all common-law disqualifications, except those expressly retained. (*Sprouse v. Magee,* 46 Ida. 622, 630, 269 Pac. 993.) The common-law rule excluding parties as witnesses has been abrogated in every state of the Union. (5 Jones Com. on Evidence, secs. 2117, 2125, pp. 3982, 3992; 5 Nichols Applied Evidence, sec. 138, p. 4751; 1 Wigmore on Evidence, sec. 488, p. 865, and note.)

The rule applicable to all witnesses, whether parties or interested in the event of an action, is, that either a board, court, or jury must accept as true the positive, uncontradicted testimony of a credible witness, unless his testimony is inherently improbable, or rendered so by facts and circumstances disclosed at the hearing or trial. (*Mcnley v. Harvey Lumber Co.,* 175 Minn. 489, 221 N. W. 913, 914.) In *Jeffrey v. Trouse,* 100 Mont. 538, 50 Pac. (2d) 872, 874, it is held that neither the trial court nor a jury may arbitrarily or capriciously disregard the testimony of a witness unim-

peached by any of the modes known to the law, if such testimony does not exceed probability. And, in *Arundel v. Turk,* 16 Cal. App. (2d) 293, 60 Pac. (2d) 486, 487, 488, the rule is stated thus: ''Testimony which is inherently improbable may be disregarded, but to warrant such action there must exist either a physical impossibility of the evidence being true, or its falsity must be apparent, without any resort to inferences or deductions.''

Appellants cite and rely upon *Davis v. Industrial Com.,* 46 Ariz. 169, 49 Pac. (2d) 394, in support of their contention that the Industrial Accident Board may disbelieve the testimony of respondent solely upon the ground that he is a party and interested in the result of this proceeding. In the Davis case it appears a rehearing was had and that just before the rehearing the Medical Rating Board appointed by the Commission, consisting of six reputable physicians, examined Davis; that such board, after considering the reports of Davis' physicians, reported that because of the discrepancies in the history of the case they were unable to determine the origin of Davis' disability. Two of the examining board made a more detailed report of the result of their examination, and one of them stated positively that, in view of the previous medical history of the case, in his opinion it was impossible that an infected ganglion, with which Davis was suffering, could have been caused by the alleged accident, and while it was possible the alleged accident might have lit up an infection then quiescent, that any permanent partial disability present at the time of the examination was undoubtedly due to a condition existing prior to the alleged accident. Upon that state of facts, the Arizona Commission denied Davis compensation, and upon appeal the court held that the burden was upon Davis to prove by a reasonable preponderance of the evidence that the injury for which he claimed compensation was caused by an accident arising out of and in the course of his employment; that the commission, as triers of fact, was subject to the same rules of law as to the credibility of witnesses and the weight to be given their testimony as a court or jury in a civil case, after which the court quotes with approval one of its former decisions in which it was held:

"In other words, if any circumstances appear in the case which would justify a reasonable man in discrediting the statement of a witness, the jury may refuse to believe it, even though it is not directly challenged, but they may not arbitrarily reject uncontradicted evidence when nothing intrinsic in the evidence itself or extrinsic in the circumstances of the case casts suspicion thereon."

The court then says it reaffirms that rule. It is apparent that the Davis case does not support appellants' contention.

Finally, it is contended by appellants that respondent's work having been performed about 7 P. M., the accident did not arise out of and in the course of his employment.

The record shows it was the custom of employees of Gray's Auto Shop, acquiesced in by the president and general manager, to work when there was any work to do either before the regular working day began or at night after it closed. And the testimony of the respondent shows that the accident occurred, and that he was injured, in the shop of his employer. This court held in *In re MacKenzie,* 55 Ida. 663, 669, 670, 46 Pac. (2d) 73, that injuries sustained by an employee upon premises owned or controlled by his employer are generally deemed to have arisen out of and in the course of his employment. Nor would the fact that respondent was a stockholder and vice-president of Gray's Auto Shop defeat the recovery of compensation. (*Albertini v. Hull Lease,* 54 Ida. 30, 33, 28 Pac. (2d) 205, 206; 71 C. J., p. 507; *Southern Surety Co. v. Childers,* 87 Okl. 261, 209 Pac. 927, 25 A. L. R. 373; *Skouitchi v. Chic Cloak & Suit Co.,* 230 N. Y. 296, 130 N. E. 299, 15 A. L. R. 1285; *Stevens v. Industrial Com.,* 346 Ill. 495, 179 N. E. 102, 81 A. L. R. 638; *Dewey v. Dewey Fuel Co.,* 210 Mich. 370, 178 N. W. 36; *Hunter v. Hunter Auto Co.,* 204 N. C. 723, 169 S. E. 648.)

It appears from the record that at about 7 o'clock in the evening of October 22, 1935, and just shortly before it is claimed the accident occurred, respondent and his wife drove in the family automobile from their home in Lewiston, downtown, and, in passing the shop of respondent's employer, they noticed a light and stopped and respondent went in where he found V. A. Westfall, a fellow employee. It

also appears that Westfall testified in behalf of respondent at the hearing before the board, but it does not appear either on direct or cross examination that Westfall was asked whether respondent's eye was, or was not, injured when claimant first entered the shop. And it further appears from the record that respondent's wife also testified in his behalf at the hearing, but that she was not asked either on direct or cross examination whether her husband's eye was, or was not, injured before their arrival at the shop on the evening of October 22d. No doubt counsel for the respective parties overlooked inquiring into the matter. The situation thus presented makes it most fitting to point out that by the enactment of the Workmen's Compensation Act the legislature intended to give injured workmen a speedy, summary, and simple remedy for the recovery of compensation in all cases coming within its provisions, that strict rules of procedure are not required, and that in every case where "compensation is not settled by agreement" (sec. 43–1403, I. C. A.) "the Board, or the member of the Board to whom the matter has been assigned, shall make such inquiries and investigations as shall be deemed necessary . . . . " (sec. 43–1404, I. C. A.), and, furthermore, where, as here, no agreement for the payment of compensation is reached, and a hearing is had, and counsel for the respective parties overlook inquiring into a matter as important and material to a fair and just determination of the controversy as that above-mentioned, *it becomes the duty of the board to make full and exhaustive inquiry* (*Feuling v. Farmers' Co-operative Ditch Co.*, 54 Ida. 326, 334, 31 Pac. (2d) 683), and to that end the board may not only examine any competent witness at the conclusion of his direct and cross-examination upon all matters material and relevant to any issue, *but it may also subpoena and examine other competent witnesses.*

The board is already (without our suggestion) fully cognizant of its powers, under the statute, to become active in investigating these cases, and of the fact that it is not required to remain merely passive and listen only to the evidence elicited by the parties or their counsel. It must be constantly kept in mind that it (the board) is an administrative and fact-finding body, exercising special judicial func-

tions (*In re Bones,* 48 Ida. 85, 94, 280 Pac. 223; *Feuling v. Farmers' Co-operative Ditch Co., supra*), and, as such, it is its duty to ascertain and produce, or cause to be produced, *all the available competent and material evidence* concerning any and all claims presented to it for consideration and allowance.

 For the reasons hereinbefore stated, and for the further reason that hereafter (under the authority of the recently adopted constitutional amendment, 1935 Session Laws, page 377, and *Mundell v. Swedlund,* 58 Ida. 209, 71 Pac. (2d) 434, and chap. 175, 1937 Sess. Laws, p. 288), in industrial accident cases, appeals must be prosecuted from the Industrial Accident Board direct to this court, we have decided to and do hereby reverse the judgment of the district court and the decision of the Industrial Accident Board, and remand this cause (sec. 43–1409a, 1937 Sess. Laws, p. 291), with instructions to grant a rehearing, costs to abide final judgment.

Morgan, C. J., and Ailshie, Budge and Givens, JJ., concur.