759 P.2d 898

Linda SWANSON, SSA 329–48–1681, Claimant–Appellant.

v.

STATE of Idaho, DHW Child Support, Employer–Respondent,

and

State of Idaho, Department of Employment, Respondent.

No. 16567.

Supreme Court of Idaho.

Aug. 9, 1988.

**608**

Linda Swanson, pro se.

Jim Jones, Atty. Gen., Boise, and Janice L. Kroeger, Deputy Atty. Gen., Coeur d'Alene, for employer-respondent Dept. of Health and Welfare. Janice L. Kroeger (argued).

Jim Jones, Atty. Gen., and Carol Lynn Brassey, Deputy Atty. Gen., Boise, for respondent Dept. of Employment. Carol Lynn Brassey (argued).

BISTLINE, Justice.

Claimant Linda Swanson appeals the decision of the Industrial Commission denying her unemployment compensation on the ground she voluntarily left her employment without good cause. Swanson argues that although she offered her resignation in an emotionally charged and physically drained state, she rescinded the resignation only two hours later. We reverse.

Swanson was employed for eight years by the Department of Health and Welfare (DHW); she worked with the Bureau of Child Support Enforcement primarily as a secretary and receptionist. On June 19, 1985, Swanson was grieving the deaths of her grandmother and a close friend. She was also suffering from a yeast infection, food allergies, and premenstrual syndrome, which caused depression, irritability, and irrational upsets.

The controversy which triggered Swanson's tendered resignation revolved around who was going to pick up the office mail. The task had once been Swanson's, but her supervisor, one Leon Martin, had been picking the mail up himself. Swanson's work load on that date was three times the norm. It was the busiest day of the year. Because she wanted to get an early start on assigned data entries, she decided to get the mail herself in order to begin entering the data therefrom into the computer.

Upon her return Martin reprimanded Swanson for picking up the mail. She left the office for a short time to cool down. Upon her return she was criticized by a fellow employee. Swanson then typed a resignation. It stated:

> Please consider this my resignation as of now. I can no longer work where I am not allowed to perform my own job tasks.
>
> Good bye.
>
> I will come back later to pick up my things.

R. at 39. At 10:30 a.m., Swanson attempted to hand deliver the resignation to Martin, but he was on the telephone. She placed the letter on his desk, left the office, and went home. A short time later Martin went to Swanson's home and delivered to her a letter accepting the resignation. Thereafter, about two hours after she submitted her resignation, Swanson personally gave Martin a written rescission of resignation.

Martin and Swanson met the following day. During the meeting Swanson was led to believe that Martin was reconsidering the acceptance of the rescission of the resignation. However, at the conclusion of the meeting Martin gave Swanson a memorandum affirming his earlier letter accepting her resignation. On the next day, June 21, 1985, Swanson submitted a departmental grievance protesting Martin's refusal to accept the rescission. Swanson thereafter received a memorandum from Martin stating that he could not accept the grievance because Swanson was no longer an employee.

On July 18, 1985, a claims examiner employed by the Department of Employment held that Swanson was eligible for compensation benefits because she was discharged, but not for misconduct in connection with employment. The examiner concluded that the resignation was submitted, during a stressful situation, without a real intention to quit. At the request of the

DHW an appeals hearing was conducted on September 6, 1985. The appeals examiner reversed the decision of the claims examiner, holding that Swanson left her employment voluntarily without good cause. Swanson appealed to the Industrial Commission and requested a hearing. Counsel for the Department of Employment filed with the commission a notice of appearance. The commission granted a hearing and assigned referee Paddock to preside. Swanson appeared *pro se.* On appeal to the Industrial Commission, the Department of Employment urged that the separation from employment was in essence a discharge, with no misconduct proven. The Commission, however, affirmed the denial of benefits. Swanson appealed to this Court and filed a brief. The Department of Employment has also filed a brief supporting Swanson.[1]

The appellate standard of review in cases arising from the Industrial Commission is well-established. Findings of fact are reviewed to determine whether such are supported by substantial and competent evidence. *Lopez v. Amalgamated Sugar Co.,* 107 Idaho 590, 691 P.2d 1205 (1984). We also examine to see if there are findings which support the conclusions of law. In deciding questions of law, we exercise free review. *Toland v. Schneider,* 94 Idaho 556, 494 P.2d 154 (1972). The Employment Security Act was enacted to alleviate the hardships of involuntary unemployment and will be liberally construed in favor of the claimant to effectuate that purpose. *Davenport v. Department of Employment,* 103 Idaho 492, 650 P.2d 634 (1982); *see also Webster v. Potlatch Forests, Inc.,* 68 Idaho 1, 187 P.2d 527 (1947).

An employee who voluntarily quits without good cause is ineligible for unemployment compensation benefits. I.C. § 72–1366(e). Swanson argues that it was not her intention to sever her employment relationship. The record establishes that the "resignation was not a planned career move." R. at 25. The claims examiner concluded that Swanson's resignation "was made without real intent, during a stressful situation." Exhibit 4. When asked the response she anticipated from her supervisor, Leon Martin, to her resignation, Swanson stated: "I felt that he would say, Linda, let's talk about this. Because I had been able to come to Leon before and talk. I always had been able to talk to him." Tr., p. 25. Thus, according to Swanson, she submitted her resignation not to end her employment, but to open up discussion with her employer. This evidence, uncontradicted, must be accepted as true. *Dinneen v. Finch,* 100 Idaho 620, 626–27, 603 P.2d 575, 581–82 (1979); *Pierstorff v. Gray's Auto Shop,* 58 Idaho 438, 447–48, 74 P.2d 171, 175 (1937).

The commission, however, accepted and utilized the referee's conclusion that Swanson's intent was irrelevant for the purpose of determining whether she voluntarily quit, once the resignation was submitted. We disagree. Fundamental to our decision is *Coates v. Bigham Mechanical & Metal Products, Inc.,* 96 Idaho 606, 533 P.2d 595 (1975), where sheet metal workers walked off the job site "because they felt non-union workers did not receive comparable wages, and did not perform the same quality of work." *Id.* at 607, 533 P.2d 596. The commission concluded that the claimants had voluntarily left their employment without good cause. In reversing the Commission, the Court held that a temporary walkout from the job site used merely as a means to illustrate displeasure with management, conducted without *intent* of terminating employment, did not render a claimant ineligible for benefits. It was stated that the unemployment compensation statute, "requires an intent to leave the employment. Absent the necessary intent, the ramifications of the action should not be considered." *Id.* at 608, 533 P.2d at 597 (footnote omitted). Thus, the commission erred as a matter of law in failing to consider Swanson's intention when she sub-

---

1. Counsel for the Department of Employment do not participate in unemployment cases in the initial administrative phases, such as the initial decision by a claims examiner and a second hearing before an appeals examiner. Only when the case goes forward by an appeal to the Industrial Commission do counsel become involved.

mitted her resignation which she withdrew only two hours later. As emphatically stated in *Totorica v. Western Equipment Co.,* 88 Idaho 534, 542, 401 P.2d 817 (1965): "Absence from the job is not a leaving of work where the worker intends merely a temporary interruption in the employment ... relation" (quoted in *Coates, supra,* 96 Idaho at 607, 533 P.2d at 596).

In *Avery v. B & B Rental Toilets,* 97 Idaho 611, 549 P.2d 270 (1976),[2] the claimant engaged in a strong and "insubordinate" argument with his supervisor over the claimant's work schedule, thereby and thereupon being summarily discharged. In reversing the decision of the Industrial Commission denying the claimant unemployment compensation, it was stated:

> While an employer has a right to expect that his employees will not engage in protracted argument after an order or directive is given to an employee, yet he cannot expect that his employees will at all times be absolutely docile or servile.

97 Idaho at 614, 549 P.2d at 273.

■ Furthermore, nothing in the record establishes, and nothing could conceivably establish that the employer detrimentally relied upon Swanson's resignation. Absent prejudice to the employer as might take place where the resignation sets in motion steps for hiring a replacement, a denial of unemployment compensation is improper. *Nicholas v. Board of Review,* 171 N.J.Super. 36, 407 A.2d 1254 (1979); *see also Armistead v. State,* 22 Cal.3d 198, 149 Cal.Rptr. 1, 583 P.2d 744 (1978).

■ The factual context of this case is unique. Generally cases arise where an employee submits a resignation to become effective days or weeks later, and prior to its effective date, attempts to withdraw it. Annotation, *Eligibility for Unemployment Compensation Benefits of Employee Who Attempts to Withdraw Resignation Be-* *fore Leaving Employment,* 36 A.L.R.4th 395 (1985). In the case at bar, unlike any case brought to our attention by counsel or research, Swanson attempted to withdraw the resignation only two hours later on the very day it was submitted. She had been an employee of DHW for eight years. A denial of unemployment benefits in such a context would contravene the liberal construction necessary to effectuate the purpose of the Employment Security Act. *Davenport v. Department of Employment, supra,* 103 Idaho 492, 650 P.2d 634 (1982). Making this case out of the ordinary was the extraordinary precipitate action taken by Mr. Martin in following Swanson to her home to deliver his acceptance. Such actions seemingly belong more appropriately in a children's or young lover's quarrel.

■ The Department of Employment argues that because Swanson did not voluntarily quit her work as a matter of law, the issue then becomes whether she was discharged for misconduct. The Department further argues that misconduct is not supported by the record. We agree.[3] Swanson's supervisor, Leon Martin, was asked the following at a hearing before the appeals examiner:

> Q: Was she doing the work to satisfaction?
>
> A: Yes, she was doing a very good job.[4]

Further, the record is barren of facts legally sufficient to support a finding of misconduct. This conclusion is consistent with the decision of the claims examiner, who held that Swanson "was discharged and there is no evidence of wilful or deliberate misconduct." Exhibit 4.

Accordingly, we reverse the decision and order of the Industrial Commission and remand the case for a determination by it of Swanson's unemployment benefits or a fur-

---

**2.** *Avery* was overruled on other grounds in *Gatherer v. Doyles Wholesale,* 111 Idaho 470, 472 n. 1, 725 P.2d 175, 177 n. 1 (1986).

**3.** Misconduct is found where an employee's conduct falls below the standard of behavior expected by the employer and whether the employer's expectation was objectionably reason-

able in the particular case. *Davis v. Howard O. Miller Co.,* 107 Idaho 1092, 1094, 695 P.2d 1231, 1233 (1985).

**4.** Exhibit Transcript of Hearing before Appeals Examiner at 20.

ther remand to the Department of Employment for that purpose.

Costs to Swanson. No attorney fees awarded on appeal.

HUNTLEY, J., concurs.

JOHNSON, J., concurs specially.

SHEPARD, C.J., dissents without opinion.

BAKES, Justice, concurring in part and dissenting in part:

If, as the majority opinion holds, the commission erred when it "accepted and utilized the referee's conclusion that Swanson's intent was irrelevant for the purpose of determining whether she voluntarily quit, once the resignation was submitted," *ante* at 609, 759 P.2d at 900, then the appropriate remedy is to remand this case to the Industrial Commission to reconsider the case based upon all the evidence, including the evidence relating to Swanson's intention. *See, e.g., Hanson v. BCB, Inc.,* 114 Idaho 131, 754 P.2d 444 (1988). However, this Court errs when it takes over the Industrial Commission's factfinding function and decides this case without referring it back to the Industrial Commission to make the appropriate findings of fact and conclusions of law.

The question of whether the claimant voluntarily quit is still a factual question to be determined by the Industrial Commission. Contrary to the majority's statement, the evidence regarding her intent was conflicting, rather than uncontradicted, as the Court's opinion states. Her trial testimony, which the Court interprets as merely intending to "open up discussion with her employer," *ante* 114 Idaho at 609, 759 P.2d at 900, stands in stark contrast to her written resignation which stated, "Please consider this my resignation as of now." The evidence is conflicting, and the commission—not this Court—has the right to resolve that conflict. *Pierstorff v. Gray's Auto Shop,* 58 Idaho 438, 74 P.2d 171 (1937), does not apply under these circumstances.

JOHNSON, Justice, specially concurring.

I concur in the result and the reasoning of Justice Bistline's opinion, except to the extent that his opinion implies that Swanson's resignation could have been self-effectuating to terminate her employment without the acceptance of the director of DHW.

The director of DHW has been given the power and duty to "[e]mploy such personnel as may be deemed necessary." I.C. § 39–106(b). This is the only statutory authorization by which DHW may employ. The record here indicates that Swanson was a classified employee of DHW who had a permanent appointment and who was subject to removal or discipline only under the provisions of Chapter 53, Title 67, Idaho Code, and the rules of the Idaho personnel commission. IDAPA 28.03.A.7. As a permanent classified employee Swanson was subject to separation by dismissal or resignation. IDAPA 28.03.A.21, 28.03.-A.49. Dismissal would have required a showing of cause. IDAPA 28.19.A.1. Resignation is defined to mean "the separation of an employee from state service made at his or her request, excluding retirement." IDAPA 28.03.A.49.

Under the rules of the personnel commission resignation is a process that is initiated by the request of an employee and is completed by the separation of the employee from state service. A request for separation by resignation is not self-effectuating. Some action must be taken by the appointing authority to separate the employee from employment. In the absence of effective delegation to some other official in DHW, the director as the appointing authority under I.C. § 67–5302(2) must take action to separate the employee from state service.

Swanson tendered a resignation, but there is no evidence indicating that the director of DHW took action to separate Swanson from her service with the department before Swanson rescinded it. There is no evidence that the director's authority to separate an employee from service had been delegated to Leon Martin, Swanson's

supervisor, or Pat Burrell, the chief of the bureau in which Swanson worked. Swanson admits that she called Burrell on the same day that she tendered her resignation, and that Burrell said she would stand behind Martin's decision. Since there is no evidence that either Martin or Burrell had authority to separate Swanson from her service with the department, Swanson remained an employee of the department at the time she rescinded her tendered resignation. This negates the conclusion of the industrial commission that Swanson voluntarily terminated her employment.

In its decision denying compensation the industrial commission cited *Batts v. Review Board of the Indiana Employment Security Division*, 179 Ind.App. 405, 385 N.E.2d 1174 (1979) for the proposition that an at-will employee may unilaterally terminate the employment relationship. That case is clearly distinguishable from the facts here. The employer there was a private employer whose relationship with its employees was not governed by statutes and rules similar to those regulating the employment of state employees in Idaho. The employer had accepted the employee's resignation before the attempted withdrawal. Here, there was no acceptance. For that reason, in addition to those stated by Justice Bistline, Swanson was entitled to unemployment benefits.