803 P.2d 555

**Kevin N. PORTER, SS 574 26 5690, Claimant–Appellant,**

**v.**

**GEM STATE PLUMBING, Employer, and State of Idaho Department of Employment, Respondents.**

**No. 17994.**

Supreme Court of Idaho,
Boise, February 1990 Term.

Dec. 28, 1990.

Kevin N. Porter, Eagle, pro se.

Jim Jones, Atty. Gen., and John C. Hummel, Deputy Atty. Gen., Boise, for respondents.

The Opinion of BAKES, C.J., JOHNSON, BOYLE, and McDEVITT, JJ.

This is a case arising under the Employment Security Law, I.C. § 72–1301 *et sequentia*. The claimant, Kevin Porter, was denied unemployment benefits on I.C. § 72–1366(e) [1] grounds. This Court re-

---

1. I.C. § 72–1366(e) provides that unemployment benefits are available if the employee's "unemployment is not due to the fact that he left his employment voluntarily without good cause connected with his employment, or that he was

views the Industrial Commission's findings to determine whether the Commission has followed the law, and whether its findings of fact are supported by "substantial competent evidence." Idaho Const. art. 5, § 9; I.C. § 72–732.

Kevin Porter worked for Gem State Plumbing from May 1984 to June 16, 1988. Doug Chaiet was the president of Gem State Plumbing, and Kevin's immediate supervisor. At one time Kevin's father-in-law had been a partner in the business with Chaiet, but Chaiet bought his interest out. Before the final payment for his part of the business was received, Kevin's father-in-law died. The executrix of his estate was Anita Porter, Kevin's spouse.

A dispute between Anita and Chaiet arose concerning the payment of taxes owed by the old partnership. In addition, Chaiet had requested and was granted the luxury of missing a few monthly installment payments on the partnership buy-out. These circumstances created tense feelings between Kevin and Chaiet. The exact words uttered in a heated exchange between the two on the morning of June 16, 1988, are disputed, but the exchange ended with Kevin driving off and not returning until the next morning, at which time Kevin was handed his final paycheck and was told to return later to pick up his vacation pay. Kevin turned in his keys to the plumbing shop, cleaned out his work truck, and departed—unemployed.

When he applied for unemployment benefits the Department of Employment denied his request. Kevin protested, and a telephonic hearing was conducted by a Department of Employment appeals examiner; unemployment benefits were again denied. Kevin requested review of the appeals examiner's findings by the Industrial Commission, which reversed the finding of the appeals examiner in a written decision on October 3, 1988. Both the Department and Gem State Plumbing moved for reconsideration. The Commission on reconsideration reversed its previous holding and affirmed the appeals examiner's findings. Kevin sought reconsideration, but the Industrial

discharged for misconduct in connection with

Commission, although recognizing that this was a "close case," denied the request. Kevin then appealed to this Court, pro se.

The basis of the Industrial Commission's final decision was simply that the Commission did "not interpret statements which were made by the Employer during the heated argument as statements which would reasonably be interpreted as discharging the Claimant." R. 35. This Court agrees with the last determination of the Industrial Commission. On the basis that the employer's actions and words are not enough in this case to sustain the conclusion that Kevin Porter was terminated, the consensus of this Court is to uphold the denial of unemployment benefits. No costs or fees on appeal. *Affirmed.*

BISTLINE, Justice, dissenting.

Because this is a close case, as was recognized by the Industrial Commission, I am unable to go with the majority. It has heretofore been my understanding that in close calls the Industrial Commission, in the first instance, and this Court in the second, will throw the call to a claimant. In unemployment law, as in workers' compensation law, the policy of both of these humanitarian enactments of the legislature is one of liberality. Not just for the sake of liberality, but because when a worker becomes injured or loses his job, he may suffer, but more than that, the consequences fall upon dependents of the worker with equal if not greater severity. In close cases, the protective provisions of the unemployment laws should be construed to cover a claimant.

Here, the case in favor of *denying* benefits is muddled. In fact, both decisions by the Commission illustrate that the statements made June 16 by both parties remain in dispute. This state of affairs focuses the inquiry upon events transpiring after that exchange, and on the following morning.

After the heated argument on June 16, Kevin left the shop. As the Industrial Commission noted in its first decision, this

his employment."

action alone does not signify that Kevin quit:

> The instant case is similar to *Swanson v. State* [114 Idaho 607, 759 P.2d 898 (1988)], recently decided by the Idaho Supreme Court. In *Swanson,* the Court reversed an order of the Industrial Commission denying Claimant unemployment compensation benefits on the basis that she voluntarily left her employment without good cause. In *Swanson,* Claimant offered her resignation in an emotionally charged and physically drained state, and rescinded the resignation two hours later. Likewise, in the instant case, there is evidence that Claimant was also in an emotionally charged state. Additionally, there is testimony that the Claimant did not offer his resignation, and his actions, like the actions in *Swanson,* were not intended to end his employment, but rather to open up discussion with the Employer.

> . . . .

> The Supreme Court has held that absence from the job is not a leaving of work where the employee intends merely a temporary interruption in the employment relation. *See Coates v. Bingham Mechanical & Metal Prods., Inc.,* 96 Idaho 606, 533 P.2d 595 (1975). In *Coates,* sheet metal workers walked off the job site to protest the fact that non-union workers did not receive comparable wages and did not perform the same quality of work. The Industrial Commission ordered that the Claimants had voluntarily left their employment without good cause and were therefore ineligible for benefits. The Supreme Court reversed the Commission holding that a temporary walk-out from the job site used merely as a means to illustrate displeasure with management, conducted without intent of terminating employment, did not render the Claimant ineligible for benefits. In the instant case, Claimant's temporary walk-out from the job site could be interpreted as a means to illustrate displeasure with the Employer, and not conducted with the intent of terminating the employment. Therefore, the Commission concludes that the Claimant did not voluntarily quit his job when he left the site on June 16, 1988, but rather was discharged when he returned to work on June 17, 1988, and the Employer handed him his final paycheck.

R. 20-21. Kevin did return the next morning, only to be handed his final paycheck and told that he should come by later for his vacation pay. Clearly, such actions by his employer would have demonstrated to Kevin or any other person of reason that the employer-employee relationship was then and there terminated.

The Commission in its final order makes no mention of its first determination in favor of Kevin. Seemingly it would have felt some obligation to reconcile and/or explain how the first decision was in error, and hence in need of supplantation by the second and final decision. Instead, the Commission engages in a discussion of Kevin's failure on returning the following day to attempt a reconciliation with Chaiet, notwithstanding that Kevin on arrival was handed his final paycheck and told to come back only to pick up his vacation pay. Such actions by one's employer can hardly be said to have left open to Kevin any notion that a request by him for continued dialogue as to his being employed was expected and would be tolerated, let alone accepted.

As the saying goes, when the ball game is over, its over. This is especially true where the call is made by the employer who also doubles as the umpire.